802 A.2d 1060

**Carole J. CAREY**

v.

**CHESSIE COMPUTER SERVICES, INC., et al.**

**No. 125, Sept. Term, 2001.**

Court of Appeals of Maryland.

July 18, 2002.

Bernard J. Sevel (Adam J. Sevel of Sevel & Sevel, P.A., on brief), Baltimore, for Petitioner.

David A. Skomba (Laura L. Stephens of Franklin & Prokopik, on brief), Baltimore, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, J.

Prior to 1963, if an employee incurred an occupational injury that, although not in itself disabling, when coupled with a previous impairment rendered the employee permanently disabled, the employer was exposed to liability under the Workers' Compensation Law for the cumulative effect of the prior and subsequent impairments. That exposure served as a disincentive for employers to hire handicapped workers.

In an effort to overcome that disincentive and encourage employers to hire persons with existing disabilities, the Legislature, in 1963, created a balanced mechanism to provide fair compensation to the subsequently injured employee and yet limit the liability of the employer. In what is now Maryland

Code, § 9–802(a) of the Labor and Employment Article (LE), the General Assembly directed, in relevant part, that if an employee, already having a permanent impairment, suffers a subsequent occupational injury that results in a permanent disability that is substantially greater, due to the combined effect of the previous impairment and the subsequent injury, than it would have been from the subsequent injury alone, the employer is liable only for the compensation payable for the subsequent injury.

To make up the difference, the Legislature created the Subsequent Injury Fund (SIF) and provided for additional compensation to be paid by that Fund if (1) the previous impairment was one that was likely to be a hindrance to the person's employment, (2) the combined effect of the previous impairment and the subsequent injury results in a permanent disability exceeding 50% of the body as a whole, and (3) each is compensable for at least 125 weeks. *See* LE § 9–802(b). The intent of the Legislature, currently expressed in LE § 9–801, was that the total compensation to the employee be equal to the amount payable for the combined effects of the previous impairment and the subsequent injury. For some of the history of the statute, see *Subsequent Injury Fund v. Pack,* 250 Md. 306, 308, 242 A.2d 506, 508 (1968) and *McKenzie v. C.C. Kottcamp & Sons,* 311 Md. 54, 57–58, 532 A.2d 703, 704–05 (1987).[1]

---

1.  A provision of this kind had been part of the Workers' Compensation Law since 1945, but, until 1963, it was restricted to the situation in which the employee had previously lost a hand, foot, leg, or eye and later became permanently *and totally* disabled because of the loss of another such part or organ by reason of an accidental injury. *See* 1945 Md. Laws, ch. 637. To the extent it applied, the law limited the employer's liability to compensation for the second injury and created a Second Injury Fund to provide additional compensation. There was no limitation of employer liability and no provision for compensation from the Second Injury Fund, however, where either the preexisting disability or the subsequent injury arose from something other than the loss of one of the enumerated body parts. The 1963 statute significantly broadened the scope of the law and replaced the Second Injury Fund with the Subsequent Injury Fund.

Although the 1963 Act provided for participation by SIF in proceedings before the Workers' Compensation Commission and required the Commission to make certain findings regarding the liability of SIF, it made no provision for allowing SIF to seek judicial review of an award against it. *See Pack, supra,* 250 Md. at 311, 242 A.2d at 509 (SIF is "nothing more than a glomerate of money, to be disbursed by the State Treasurer on written orders of the Commission" and is therefore not a "person" entitled to seek judicial review of a Commission order to pay). That disability was corrected by legislation in 1969. *See* 1969 Md. Laws, ch. 394; *see also Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 747, 599 A.2d 875, 878 (1992).

In 1974, the General Assembly perceived a remaining gap—the situation present here, in which SIF had not been made a party to the proceeding before the Commission but either the employer or the claimant desired to have its liability under § 9–802 determined in a judicial review action—and addressed that matter through the enactment of what is now LE § 9–807, allowing a party to implead SIF in the judicial review action. As a procedural mechanism for invoking § 9–802, LE § 9–807 provides that, in any case involving payment from SIF, the Commission or any party in interest shall give written notice to the State Treasurer or the attorney for SIF and implead SIF in writing. Section 9–807(b) permits SIF to be impleaded at any stage of the proceeding, either before the Commission or on judicial review in a Circuit Court or the Court of Special Appeals. In tacit recognition of the fact that the factual bases for liability on the part of SIF must be determined in the first instance by the Commission, however, § 9–807(b)(2) provides that, if SIF is impleaded in a judicial review action pending in either a Circuit Court or the Court of Special Appeals, "the court shall (i) suspend further proceedings; and (ii) remand the case to the Commission for further proceedings to give [SIF] an opportunity to defend against the claim."

■ The issue presented to us in this somewhat convoluted case is whether the mandate in § 9–807(b)(2) that the court, upon an impleading of SIF, suspend further proceedings and remand the case to the Commission, effectively *withdraws* jurisdiction from the court to do otherwise, and thus makes any order or judgment entered by the court in derogation of that direction a nullity, or simply directs the court in how to exercise its jurisdiction in that circumstance. In that latter event, which we shall hold to be the case, any order or judgment entered in defiance of that mandate, though wrong and subject to reversal or vacation on appeal, is not in excess of the court's jurisdiction and is therefore effective unless and until reversed or vacated on appeal.

## BACKGROUND

In November, 1992, petitioner, Carole Carey, filed a workers' compensation claim, alleging that on August 3, 1992, while in the employ of respondent, Chessie Computer Systems, Inc., she injured her back, neck, and knees when a chair she was about to sit on collapsed and tipped over, causing her to fall. The case was essentially put on hold for four years, while petitioner unsuccessfully pursued a Federal Employees Liability Act claim, apparently on the theory that her employer was CSX, a railroad subject to that Act. Not until the U.S. Court of Appeals for the Fourth Circuit affirmed a judgment that there was no Federal jurisdiction did petitioner pursue her State workers' compensation claim, which was heard in November, 1996.

Notwithstanding essentially uncontested evidence well-known to respondent that, in 1983, petitioner had sustained another work-related injury to her neck while working for CSX, that she had undergone surgery for that injury, and that she had made and settled a FELA claim based on the injury, respondent, though contesting whether she sustained an accidental injury in August, 1992, did not implead SIF. On November 18, 1996, the Commission found that petitioner sustained a compensable accidental injury on August 3, 1992, and that, as a result of that injury, she was temporarily totally

disabled from August 4, 1992, to November 14, 1994. It made no finding with respect to the preexisting injury. On the findings it made, the Commission ordered respondent to pay petitioner $436 a week for that 27–month period, less wages actually paid, and to pay certain medical expenses in accordance with the Commission's Medical Fee Guide.[2]

Respondent sought judicial review of that order in the Circuit Court for Baltimore County in December, 1996. Ten months later, after discovery was completed, petitioner moved for summary judgment. From the accompanying memorandum and petitioner's argument at the hearing, it appears that the motion was based on the presumption of correctness of the Commission's decision, supplemented by (1) respondent's admission in discovery that petitioner had sustained an occupational accident on August 3, 1992, and (2) respondent's failure, in response to discovery requests, to adduce any facts that would indicate that petitioner's injuries and disability were not attributable to that accident. In response to that motion, respondent filed a motion to implead SIF, contending, for the first time, that SIF should be a party in the case. Noting LE § 9–807(b), respondent asked the court to "grant the Motion to Implead the Subsequent Injury Fund" and remand the case to the Commission.

At a hearing on the motions, petitioner argued that, because the motion for summary judgment was filed first and because respondent failed to show any reason why it should not be granted, the court should grant that motion and *then* remand the case. Petitioner urged that SIF would not be prejudiced by that approach—that it could make whatever defense it chose without regard to the judgment against the employer—but that, as respondent already had the opportunity to present its case to the Commission, judicial economy would be served by confirming its liability. Respondent offered no substantive defense to the motion but contended that § 9–807(b) was jurisdictional in nature and that, upon the filing of the motion

---

2. There was evidence that petitioner continued to receive her regular wages for a period of six months following the accident.

to implead SIF, the court lost jurisdiction to do anything other than remand the case—that it was without jurisdiction to enter a summary judgment. The court, through Judge Turnbull, disagreed with respondent and, treating the motion to implead SIF as just that—a *motion* that required a court response—decided that, because the motion for summary judgment was filed first, it would grant that motion and *then* grant the motion to implead. By ruling on the motions in that order, Judge Turnbull believed that there could be no jurisdictional impediment to his granting the summary judgment.[3]

Respondent filed a timely motion under Maryland Rule 2-534 to alter or amend the judgment, asserting, for the first time in the judicial review proceeding, that there were genuine issues of material fact in dispute. That motion was denied on December 11, 1997. No appeal was taken from the judgment, and the case returned to the Commission pursuant to the order of remand.

For whatever reason, no further proceedings were held before the Commission for two years. On January 18, 2000, following a hearing, the Commission entered an order declaring that respondent had failed to comply with the November 18, 1996 award and that the underpayment amounted to $38,866. The order directed respondent to pay that amount plus a 20% penalty for nonpayment of the award (*see* LE § 9-728) and an attorney's fee of $400. The transcript of the hearing has not been included in the record before us, al-

---

3. Although that sequence is clearly indicated in the transcript of the hearing, the docket entry evidencing the rulings suggests a different order. It reads: "Nov. 12, 1997. Hon. John G. Turnbull, II. Hearing had. Motion to Implead (paper 20.000) Granted, case remanded to commission for further proceedings. Claimant's motion for Summary Judgment filed 10/10/97 (paper 15.000) Granted. Hearing Had on all Motions." We have generally followed the rule that, in the event of a discrepancy between the transcript and a docket entry, absent some independent evidence that the transcript is in error, it will prevail and, if necessary, the docket entry will be corrected. *See Waller v. Maryland Nat'l Bank*, 332 Md. 375, 379, 631 A.2d 447, 449 (1993); *Savoy v. State*, 336 Md. 355, 360 n. 6, 648 A.2d 683, 685 n. 6 (1994); *Roberts v. State*, 219 Md. 485, 488, 150 A.2d 448, 450 (1959). In this case, for the reasons to be explained, any discrepancy is irrelevant.

though an incomplete copy appears in respondent's brief. There is no indication of any participation by SIF. Indeed, the only issue apparently addressed by the Commission concerned respondent's failure to comply with the 1996 award which, in turn, hinged on a dispute over the proper method of calculating the credit for wages paid to petitioner during the period of temporary total disability. There is no indication that respondent made any effort to relitigate whether petitioner was entitled to benefits in the first instance or whether any part of the compensation should come from SIF.

Respondent again sought judicial review in the Circuit Court for Baltimore County, of both the November, 1996, and the January, 2000, orders, thereby inaugurating a somewhat confusing set of proceedings, not all of which are fully documented in the record before us.[4] In March, 2000, petitioner moved to dismiss the petition for review of the November, 1996 order on the ground that that issue had been litigated in the earlier judicial review action, judgment had been entered against respondent, no appeal had been taken from the judgment, and the judgment was therefore conclusive.

On May 31, respondent filed a motion for summary judgment, in which it took the position that its impleading of SIF in the earlier action served (1) to divest the Circuit Court of jurisdiction to enter the summary judgment against it, and (2) to render the Commission's 1996 award itself a nullity. In its view, the impleading of SIF returned the case to its original

---

4. The record delivered to us by the Court of Special Appeals pursuant to our writ of *certiorari*, which appears to be that certified by the Clerk of the Circuit Court, does not contain most of the papers filed in the second judicial review action or, indeed, even the docket entries pertaining to that action. Those docket entries and some, but not all, of the papers are included either in the record extract filed with the Court of Special Appeals or in an appendix to respondent's brief in this Court, so we assume that, at some point, they were filed with the court and were in the actual record. As there does not appear to be any dispute between the parties as to what was filed or what the Circuit Court did, these lapses do not affect our ability to decide the issue before us. It would be helpful, however, if counsel would fulfill their responsibility to assure that the record filed or transmitted by a lower court clerk is accurate and complete.

state, as if no order had ever been issued by the Commission and no judgment had been entered by the court. Respondent sought a judgment that the original award of November, 1996, was of no effect and that no award could be entered until SIF and respondent were afforded an opportunity to defend on the merits at a further hearing before the Commission. Respondent also urged that the Commission, in its January, 2000 order, abused its discretion in assessing a penalty against respondent.

The motion for summary judgment was apparently misfiled for a time. On June 1, the court, acting again through Judge Turnbull, granted the partial motion to dismiss, without a hearing and apparently without knowledge of the motion for summary judgment. On June 5, SIF filed a notice with the clerk that it did not intend to participate in the action "since the issues to be heard do not involve [SIF]." Respondent filed a motion for reconsideration, to which petitioner filed a response, neither of which is in the record. All of this came before Judge Hennegan who, on June 21, 2000, entered an order granting respondent's motion for summary judgment. In his order, which was flatly inconsistent with the order of Judge Turnbull entered three weeks earlier, Judge Hennegan declared that the Commission's award of November, 1996 "became of no effect upon the impleader of [SIF]." He reversed the Commission's order of January, 2000, and remanded the case "for further proceedings including, but not limited to compensability and benefits issues with full participation by all parties, including [SIF]."

Petitioner appealed to the Court of Special Appeals, which vacated the summary judgment and remanded for further proceedings in the Circuit Court. *Carey v. Chessie Computer*, 141 Md.App. 228, 784 A.2d 1151 (2001). The intermediate appellate court concluded, in relevant part, that (1) Judge Turnbull's order granting the motion to dismiss the petition for judicial review of the Commission's November, 1996 order was interlocutory in nature, in that it did not dispose of all issues in the action, and therefore did not divest the court, through Judge Hennegan, of jurisdiction to act inconsistently

and grant the motion for summary judgment, (2) the summary judgment entered by Judge Turnbull in 1997 was not entitled to *res judicata* status because, upon the impleading of SIF, the court lost jurisdiction to do anything other than remand the case and the summary judgment was therefore void *ab initio*, but (3) although the summary judgment was void, the impleading of SIF did not disturb the existing Commission order, which remained in effect, subject to modification by the Commission.

In light of that last conclusion, which rendered erroneous Judge Hennegan's determination that the 1996 Commission order was "of no effect," the court remanded the case to the Circuit Court for further proceedings, to resolve whatever issues respondent chooses to raise with respect to both the 1996 and 2000 orders of the Commission. We granted *certiorari* to consider two of the rulings made by the Court of Special Appeals—whether Judge Hennegan had jurisdiction to act inconsistently with the ruling by Judge Turnbull and whether the summary judgment granted by Judge Turnbull in 1997 was entitled to preclusive effect.

## DISCUSSION

■ We may dispose quickly of the first issue. The second petition for judicial review raised a number of discrete issues. Respondent sought to litigate not only the validity of the 1996 order but also, in connection with the 2000 order, the calculation of credits against the 1996 award and the 20% penalty. The motion to dismiss granted by Judge Turnbull dealt only with the attack on the 1996 order and therefore did not adjudicate all of the claims in the action. The Court of Special Appeals was quite correct in pointing out that, under Maryland Rule 2–602(a), an order that does not dispose of all of the claims in the action, in their entirety, does not terminate the action as to any of the claims and "is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties." There was no *jurisdictional* impediment, therefore, to Judge Hennegan's revisiting, through the motion for summary judgment, the

issue ruled upon by Judge Turnbull. *See Gertz v. Anne Arundel County*, 339 Md. 261, 661 A.2d 1157 (1995).

The second, and principal, issue is more problematic, because of an apparent gap in the rules governing the procedure for impleading SIF at the Circuit Court level and the manner chosen by respondent to achieve that impleading. The parties and both lower courts have assumed throughout that respondent effectively impleaded SIF by merely filing a motion to do so. The entire debate over whether Judge Turnbull had the authority or jurisdiction to grant the summary judgment hinges on that assumption, for, unless SIF was effectively impleaded prior to the time the summary judgment was entered on the docket, LE § 9–807(b), whether jurisdictional or not, was inapplicable and could serve as no impediment to the entry of the summary judgment.

Section 9–807(b) uses a technical term and a technical concept in providing for participation by SIF. It allows a party to "implead the Fund, as a party," and speaks to what must happen when SIF is so "impleaded" while the case is pending in a Circuit Court or the Court of Special Appeals. When the case is pending before the Commission, the procedure for impleading SIF is governed by a Commission regulation (COMAR 14.09.01.13), which requires the impleading party to serve on SIF the original claim and any amendments, each issue previously filed in the claim, any order or award entered by the Commission on the claim, and the identification of any prior awards or settlements to the claimant for permanent disability approved by the Commission or a comparable commission of another State. That regulation obviously does not apply when the case is in the Circuit Court or the Court of Special Appeals, however, and, unfortunately, there appears to be no comparable rule for impleading SIF at either of those levels.

An action for judicial review is an original civil action in the Circuit Court, and, except to the extent that the rules governing judicial review actions, Maryland Rules 7–201 through 7–210, expressly, or by necessary implication, provide otherwise,

the procedural aspects of the action are governed by the rules in Title 2 of the Maryland Rules. *See* Md. Rule 1–101(b). There is no express provision or procedure in Rules 7–201 through 7–210 for impleading third parties. Indeed, the only rule specifically governing impleaders in the Circuit Court is Maryland Rule 2–332, section (a) of which provides that a defendant, as a third-party plaintiff, "may cause a summons and complaint, together with a copy of all pleadings, scheduling notices, court orders, and other papers previously filed in the action, to be served upon a person not previously a party to the action who is or may be liable to the defendant for all or part of a plaintiff's claim against the defendant" and that "[a] person so served becomes a third-party defendant." Under that rule, impleader is accomplished by serving the third party with process and the other required documents, not by filing a motion to implead.

The problem is that, under its own terms, Rule 2–332 applies only when the third-party defendant may be liable *to the defendant* for some part of the plaintiff's claim, *see Allen & Whalen, Inc. v. Grimberg Co.*, 229 Md. 585, 185 A.2d 337 (1962), and that is not the case with respect to SIF. The purpose of bringing SIF into the case is so that the Commission may, if appropriate under the facts, make an award against it in favor of the claimant. The thrust of the law is that the employer is liable to the claimant only for the disability arising from the subsequent injury. If SIF has any liability arising from the previous disability, that liability is directly to the claimant and not to the employer. LE § 9–802(b) is quite clear in that regard: "In addition to the compensation for which an employer or its insurer is liable, the covered employee is entitled to compensation from the Subsequent Injury Fund if. . . ." Because SIF would have no liability to the *employer* by reason of the claimant's claim, Rule 2–332 does not apply. Nor, it would appear, does any other rule applicable in either the Circuit Court or the Court of Special Appeals.

It is evident that, though neither Rule 2–332 nor the CO-MAR regulation is technically applicable with respect to an

impleading of SIF in a judicial review proceeding, their requirements are similar in nature and are intended to serve the same dual purpose: (1) to give adequate notice to SIF of its involvement in the case, of the issues in the case, and of the current status of the case, and (2) to acquire formal jurisdiction over SIF. It is also evident that the mere filing of a motion to implead, especially one, as here, that was apparently never served on SIF, does not suffice to achieve either of those purposes.

Pending some amendment to the Rules to cover specifically this unique situation, which, on recommendation from our Standing Committee on Rules of Practice and Procedure, we may choose to adopt in our rule-making capacity, it would seem that the most appropriate way of impleading SIF when the matter is pending in a court is for the party seeking the impleader to (1) use and comply with the procedure set forth in COMAR 14.09.01.13, which gives SIF the information it needs to respond, (2) make certain that either the State Treasurer or the attorney for SIF is notified, as required by LE § 9–807, and (3) file with the court, and serve on the other parties, a written notice of impleader attesting that those two procedures have been followed, to document the impleading and establish the time at which the requirements of LE § 9–807(b)(2) become effective.

Although a mere motion to implead would not suffice to effect an impleader under this procedure, given (1) the lack of direction in the rules or previous guidance from this Court as to how an impleader of SIF should be accomplished, (2) the fact that SIF was, in fact, apprised of the impleader and given a full and fair opportunity to participate in all further proceedings, which it consciously chose not to do, and (3) the courts and the parties have all treated the impleader as effective and have not challenged it, we too shall, in this unique situation, treat the impleader as having been accomplished prior to the entry of the summary judgment by Judge Turnbull and shall proceed to resolve the issue we granted *certiorari* to address.

LE § 9–807(b)(2) clearly directs a Circuit Court, upon an impleading of SIF, to suspend further proceedings and remand the case to the Commission.[5] There is nothing ambiguous about that direction, and we agree with the Court of Special Appeals that it leaves no room for discretion or maneuvering. It does not permit the court to defer a remand and enter rulings or take other action that may affect the rights, liabilities, or status of the parties. That does not mean, however, as respondent urges and the intermediate appellate court held, that the statute is jurisdictional in nature and thus serves to render a violation of it absolutely void, rather than merely voidable by an appellate court. Indeed, our recent jurisprudence establishes quite clearly that such is not the case.

In earlier days, courts seemed more willing to view limitations on their authority or discretion as jurisdictional in nature. We have moved away from that view in the past few decades, however, in part because of the consequences of such an approach. In *Fooks' Executors v. Ghingher,* 172 Md. 612, 619, 192 A. 782, 785, *cert. denied,* 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 (1937), we recounted some of the rhetorical flourish describing the effect of actions taken in excess of a court's jurisdiction—"a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant," "it neither bestows nor extinguishes any right and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title," "all acts performed under it and all claims flowing out of it are void," "the parties attempting to enforce it may be responsible as trespassers," "it neither binds nor bars any one."

---

**5.** If the matter is pending in the Court of Special Appeals when the impleader occurs, that court, instead of remanding the case directly to the Commission, must vacate the judgment of the Circuit Court and remand to that court with instructions for it to remand to the Commission. That procedure would not only be more consistent with normal appellate practice but would also eliminate problems that might arise from the continued existence of the Circuit Court judgment.

That characteristic—the utter nullity of rulings that the court had no jurisdiction to make—necessarily follows from the very concept of the rule of law, the protection of which is a court's predominant, if not only, function. The Judiciary can no more bind persons to orders it has no power to make than can any other institution or branch of government. If Order is not to descend into Chaos, however, that characteristic needs some circumscription, which, through revisiting the notion of jurisdiction, we have given it. Though recognizing the broad and varied meanings that have been given to the term "jurisdiction" in various contexts, we have in recent times determined that, when considered in terms of whether challenged rulings are truly and intrinsically void or merely erroneous and therefore voidable, the term must be taken in a more limited sense, to mean "fundamental jurisdiction"—the "power to act with regard to a subject matter which 'is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.'" *Pulley v. State,* 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980) (quoting from *Cooper v. Reynolds' Lessee,* 10 Wall. 308, 77 U.S. 308, 316, 19 L.Ed. 931, 932 (1870)). We added in *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 335, 322 A.2d 539, 543 (1974), that "[i]f by that body of law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction." (Emphasis in original.)

Application of that principle has led us to conclude, most recently in *Board of License Comm. v. Corridor,* 361 Md. 403, 417, 761 A.2d 916, 923 (2000), that "[s]imply because a statutory provision directs a court or an adjudicatory agency to decide a case in a particular way, if certain circumstances are shown, does not create an issue going to the court's or agency's subject matter jurisdiction." Citing six earlier cases, we added in *Corridor:*

"There have been numerous cases in this Court involving the situation where a trial court or an adjudicatory agency

has jurisdiction over the subject matter, but where a statute directs the court or agency, under certain circumstances, to exercise its jurisdiction in a particular way, or to rule in favor of a respondent, or to dismiss the case, and the tribunal erroneously refuses to do so because of an error of statutory interpretation or an error of fact. In these situations, this Court has regularly held that the matter did not concern the subject matter jurisdiction of the trial court or the agency."

*Id.* at 418, 761 A.2d at 923–24.

There is nothing in either the language of LE § 9–807(b)(2) or in its legislative history to indicate any intent by the Legislature to terminate or withdraw fundamental subject matter jurisdiction from a reviewing court upon the impleading of SIF.[6] It is, rather, the very kind of directive of which we spoke in *Corridor,* going to the manner in which a court is to exercise the fundamental jurisdiction it clearly has. A violation of that directive, which unquestionably occurred when the court proceeded to enter the summary judgment against

---

**6.** As noted, the statute subsequently codified as § 9–807(b) was enacted in 1974. The bill (HB 1385) was introduced as a departmental bill, probably for the Governor's Commission to Review Laws Governing Workmen's Compensation, which was the source of much workers' compensation legislation in the 1970's. As we have pointed out, until 1969, SIF was not even regarded as a "person" entitled to participate in a proceeding and was unable to seek judicial review of an award made against it. The initial purpose of the 1974 bill was to add to the judicial review section of the workers' compensation law, then § 56 of Article 101 of the Code, a provision that an award may not be made against SIF, by the Commission or by any court, unless SIF was a party to the proceeding and was represented by counsel. That language now appears in LE § 9–743. During the legislative process, the General Assembly added to § 66 of Art. 101, which already provided for awards against SIF and included the duty of the Attorney General to provide representation for SIF, the provisions now appearing in LE § 9–807(b). Although the legislative committee files that might have shed more light on the purpose of the amendment were not retained by the Legislature and are therefore unavailable, it seems evident that the amendment was simply designed to provide a procedural mechanism for enforcing the substantive right of SIF to participate in any proceeding that might lead to an award against it. Indeed, the conforming amendment to the title to the bill describes the amendment made to § 66 as "establishing certain procedures in certain cases involving awards from [SIF]."

respondent notwithstanding that SIF had, by then, been impleaded, is error, correctable on appeal, but it does not render the action taken in violation void.

■ The problem, for respondent, is that it chose not to appeal the summary judgment. Once that judgment became enrolled, therefore, it was binding on respondent and not subject to relitigation in a subsequent judicial review proceeding. Without regard to whether the Commission, as part of its broad readjustment and modification powers under LE § 9–736, may have been *authorized* to make some adjustment when the case was remanded, respondent had no right to insist that it do so, and, in fact, it chose not to do so. The judgment entered in November, 1997, establishing respondent's liability was therefore binding on respondent and not subject to further review by the court. It is clear, then, that the summary judgment entered by Judge Hennegan was in error for that reason. He had no authority to revisit and annul the 1996 order, which was precluded by the 1997 judgment from reconsideration, and the Court of Special Appeals erred in concluding that the 1997 judgment was void for jurisdictional defect.

The case must be remanded to the Circuit Court for further proceedings, but only with respect to the January, 2000 order of the Commission and limited to issues dealing with the extent of any underpayment of the original award and the penalty assessed by the Commission.

JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE JUDGMENT OF CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THIS OPINION; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.