947 A.2d 614

**Alfred FRACTION & Gregory Nutter**

v.

**SECRETARY, DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES.**

**Nos. 585, Sept. Term, 2007, 586, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 8, 2008.

722

Joseph B. Tetrault (Stephen Z. Meehan, Pauline K. White, Prisoner Rights Information System of Maryland, Inc. on the brief), of Chestertown, for appellant.

Susan Howe Baron (Douglas F. Gansler, Attorney General on the brief), of Baltimore, for appellee.

Argued before JAMES R. EYLER, FREDERICK J. SHARER* and JAMES A. KENNEY, III, (Ret., Specially Assigned), JJ.

JAMES R. EYLER, J.

Alfred Fraction and Gregory Nutter, appellants, appeal from a judgment entered by the Circuit Court for Somerset County, affirming the denial of appellants' inmate grievances by the Secretary of the Department of Public Safety and Correctional Services, appellee. Each appellant had been convicted, sentenced, released on mandatory supervision, convicted of new crimes, and reincarcerated. An Administrative

---

* Sharer, J. Frederick, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as retired, specially assigned member of this Court.

Law Judge ("ALJ")[1] held that the Division of Correction ("DOC")[2] did not err in refusing to apply certain diminution of sentence credits—earned prior to release on mandatory supervision—when calculating appellants' new release dates. In each case, the Maryland Parole Commission ("MPC"), the agency responsible for administering the applicable laws, had revoked appellants' mandatory supervision and, in doing so, was silent with respect to the credits. The DOC refused to apply the diminution of sentence credits, however, pursuant to a directive from the MPC in February, 1990, wherein it informed the DOC that, as of July 1, 1989, it was the MPC's intent that all diminution of sentence credits earned prior to release on mandatory supervision be rescinded upon revocation of release, unless the MPC expressly stated otherwise.

On appeal, appellants contend that the MPC was required to make an express determination to revoke diminution credits, in each case in which it revoked mandatory supervision, and having failed to do so when it revoked appellants' mandatory supervision, their diminution credits had to be applied by DOC.

We conclude that the inmate grievance procedure was not the appropriate vehicle to raise the issue, and thus, we shall affirm.

### Facts relating to appellants' diminution credits

The issue presented is one of law. There is no dispute as to the facts, and consequently, we shall quote from appellants' brief, omitting extract references.

Fraction

On January 24, 1984, Alfred Fraction was committed to DOC to serve a sentence of seven years, commencing June 11, 1983. On his motion for modification of sentence, the

---

1. The ALJ's decision constitutes the final agency decision. *See* Maryland Code (1999, 2007 Supp.), § 10–209(b)(1) of the Correctional Services Article ("C.S.").

2. The Division of Correction is in the Department of Public Safety and Correctional Services. *See* C.S. § 3 –201.

term was reduced to five years on June 19, 1984, resulting in a maximum expiration date of June 11, 1988. While in DOC, Fraction was awarded or earned 290 good conduct credits, 159 industrial credits, and 78 special project credits.[3] With the application of these credits to his maximum date, Fraction was released to mandatory supervision on December 27, 1986.[4]

Fraction committed new offenses and on February 17, 1988, received several sentences, the longest being 25 years, all commencing on October 3, 1987. On April 11, 1988, Fraction received an additional sentence of six months and a day, consecutive. On May 2, 1990, MPC revoked Fraction's mandatory supervision, allowing six months "street time" credit.[5] Although aware that Fraction was released to mandatory supervision and not parole, the presiding commissioner took no action regarding the diminution credits that resulted in Fraction's release from DOC.

Fraction received another sentence on October 23, 1991, which brought his maximum date to April 4, 2016. His projected date for release to mandatory supervision was January 10, 2010, as of August 23, 2005, the date IGO

3. These three types of diminution credit are governed by C.S. §§ 3–704, 3–705 and 3–707, respectively. A fourth type, educational credit, is governed by C.S. § 3–706.

4. Mandatory supervision is "a conditional release from confinement [granted] to an inmate who: (1) is serving a term of confinement of more than 12 months; (2) was sentenced on or after July 2, 1970, to the jurisdiction of the [DOC]; and (3) has served the term or terms, less diminution credit...." C.S. § 7–501; *see also Secretary of Public Safety v. Hutchinson,* 359 Md. 320, 326–27, 753 A.2d 1024 (2000). DOC has no discretion here and must release the prisoner on the day appointed by the law. Although there is no discretion as to the date of release, these prisoners are nevertheless released as if on parole. *See* C.S. § 7–502(b) (2007 Supp.).

5. "Street time" is a day-for-day credit against the balance of the sentence for time out of DOC custody. *See State v. Parker,* 334 Md. 576, 588, 640 A.2d 1104 (1994). Any time not credited by MPC is added by DOC to the previous maximum expiration date, for a new "adjusted" maximum expiration date, pursuant to C.S. § 7–401(d)(1) (2007 Supp.); *see also* C.O.M.A.R. 12.08.01.22F(7)(h).

[Inmate Grievance Office] conducted a preliminary review of his grievance. The application of the 527 diminution credits at issue in his case to that projected date would result in a mandatory supervision date of August 1, 2008.[6]

Nutter.

On June 23, 1987, Gregory Nutter was sentenced to three years, commencing October 3, 1986. On October 1, 1987, he was sentenced to 18 months, consecutive. His maximum expiration date was therefore April 3, 1991. With the application of 522 diminution credits, Nutter was released to mandatory supervision on October 28, 1989.

On September 5, 1990, Nutter was sentenced to two years, commencing May 18, 1990. On November 7, 1990, he was sentenced to three years, commencing August 30, 1990. On November 13, 1990, MPC revoked Nutter's mandatory supervision, allowing no "street time" credit. As in Fraction's case, MPC took no action regarding Nutter's diminution credits. At the hearing before OAH, counsel for DOC conceded that there was no mistake on the part of MPC as to the type of release.

On June 19, 1992, Nutter was sentenced to 25 years, commencing March 15, 1990, resulting in a maximum date of March 15, 2015. As of June 23, 2005, the date of preliminary review of his grievance by IGO, Nutter's projected date for release to mandatory supervision was January 5, 2010. With the application of the 522 diminution credits at issue to that projected date, his mandatory supervision date would also be August 1, 2008.[7]

## Background

As indicated above, inmates can earn diminution credits known as good conduct, industrial, educational, and special

6. At oral argument, Fraction's counsel advised that Fraction's current mandatory supervision date, after applying all alleged credits, was the end of December, 2007.

7. At oral argument, Nutter's counsel advised that Nutter's current mandatory supervision date, after applying all alleged credits, is the end of February, 2008.

project credits. *Frost v. State*, 336 Md. 125, 128, 647 A.2d 106 (1994). When an inmate earns sufficient credits to be entitled to release, the inmate is released. Prior to 1970, inmates released early, because of diminution credits, were treated as if they had served their entire sentence. *Secretary of Public Safety v. Hutchinson*, 359 Md. 320, 325, 753 A.2d 1024 (2000). In 1970, legislation was enacted providing that such inmates "shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced." Ch. 406 Acts of 1970, Maryland Code (1957, 1971 Repl.Vol.), Art. 41, § 127A, (now C.S. § 7–502). The MPC is the agency responsible for administering the laws applicable to inmates released on mandatory supervision. In 1970, the release was known as "mandatory release," but since 1989, it is known as "mandatory supervision." Art. 41, § 4–501(13) (now C.S. § 7–501).

The 1970 legislation did not expressly address the disposition of diminution credits in the event of release and subsequent revocation of release. In 1989, the legislature amended Art. 41, § 4–612, effective July 1, 1989, to expressly state that MPC had authority to "rescind all diminution credits previously earned on the sentence or any portion thereof...." *Frost*, 336 Md. at 130, 647 A.2d 106 (quoting Ch. 307 of the Acts of 1989) (codified in Maryland Code (1957, 1986 Repl.Vol., 1989 Cum.Supp.)), Art. 41, § 4–612(e) (now C.S. § 7–504(b)(1) (2007 Supp.)). The current provision provides that "[t]he commissioner presiding at an individual's mandatory supervision revocation hearing may revoke [8] any or all of the diminution credits previously earned by the individual on the individual's term of confinement." C.S. § 7–504(b)(1) (2007 Supp.).

In *Frost*, the defendants, Carl Frost and Henry King, were each sentenced to a term of imprisonment. By virtue of diminution credits earned, each was mandatorily released.

---

8. The change from "rescind" to "revoke" was not substantive. It was for consistency with C.S. §§ 3–709 and 11–507. *See* Revisor's Note to C.S. § 7–504.

While on mandatory release, each was arrested for other offenses, convicted, and sentenced to an additional period of incarceration. In 1990 and 1992, respectively, the MPC revoked each defendant's mandatory release, and each defendant's maximum sentence expiration date was determined without applying previously earned diminution credits. *Frost*, 336 Md. at 129, 133, 647 A.2d 106.

Frost and King contended that, prior to 1989, the law did not permit revocation of diminution credits, and even though the MPC, in 1989, was given express authority to revoke such credits, the law could not be applied to them because it would violate the *ex post facto* clauses of the United States and Maryland constitutions. *Id.* at 130, 133, 647 A.2d 106 (citing U.S. Constitution, Article I, § 10, cl. 1; Maryland Declaration of Rights, Article 17).

The Court of Appeals agreed with the State and held that, under the law as it existed prior to 1989, diminution credits were lost by operation of law when the MPC revoked an inmate's mandatory release. *Id.* at 139, 647 A.2d 106. Thus, the 1989 law providing that the MPC "may rescind" diminution credits was not more onerous and did not violate the ex *post facto prohibition.* *Id.* at 141, 647 A.2d 106.

On February 14, 1990, apparently as a result of the 1989 law, the MPC adopted Policy 2–24, which provides that,

"[e]ffective retroactively to July 1, 1989, it is the intent of [MPC] that *all* diminution of sentence credits earned prior to Mandatory Release be rescinded upon revocation of release. The exception will be cases where the Revoking Commissioner expressly states otherwise."

On February 22, 1990, the MPC communicated its policy to DOC. On November 5, 1997, the MPC further advised the DOC, with respect to diminution credits:

If the Commissioner is rescinding ALL credits, the Commissioner will indicate ALL in the appropriate space.

If the Commissioner is SILENT with respect to the rescission of diminution credits, the DOC is authorized to rescind ALL diminution credits.

If the Commissioner wants to rescind a portion of the credits, the Commissioner will indicate the NUMBER in the appropriate space. The DOC is authorized to deduct the credits in the following order: Good conduct, special credit, industrial and educational.

After being denied relief by the warden of their respective correctional institutions and by the Commissioner of Correction, each appellant filed an inmate grievance with the IGO. An ALJ dismissed the grievances, and the circuit court affirmed. We granted appellants' applications for leave to appeal and consolidated them for purposes of disposition.

## Contentions

Appellants contend (1) the IGO had jurisdiction over their grievances and that, in any event, the question of jurisdiction was not raised before the agency and is not properly before us; (2) the MPC, in each individual case, must exercise discretion and make a decision regarding the disposition of diminution credits, when revoking mandatory supervision; (3) MPC Policy 2–24 is a regulation within the meaning of the Administrative Procedure Act (APA), Maryland Code (2004 Repl.Vol.), § 10–101 *et seq.* of the State Government Article, and invalid for failure to comply with the terms of the Act, and; (4) the rule of lenity is applicable to an MPC decision that does not expressly direct the disposition of diminution credits.

Appellee contends (1) appellants' claims constitute a complaint against the MPC, and the IGO lacks jurisdiction; (2) the MPC rescinded the diminution credits when it revoked appellants' mandatory supervision; (3) MPC policies do not have to be promulgated under the APA; and, (4) if the MPC's reliance on its policy was improper, then it should be directed to conduct a hearing to address the revocation of diminution credits.

### Discussion

As stated earlier, the question before us is one of law. Thus, our review is *de novo*. *See Watkins v. Secretary, Department of Public Safety and Correctional Services*, 377 Md. 34, 45–46, 831 A.2d 1079 (2003).

Appellee first contends that the IGO lacked jurisdiction because appellants' complaint is against the MPC and the jurisdiction of the IGO is limited to grievances "against . . . official[s] or employee[s] of the [DOC] or the Patuxent Institution." C.S. § 10–206(a). Appellee points out that the MPC has exclusive jurisdiction to determine the disposition of diminution credits when mandatory supervision is revoked, and in 1990, it advised the DOC that, unless otherwise stated, its intent was to revoke all diminution credits. The DOC simply complied with the MPC's directive.

Appellants first argue that the issue is not before us because it was not raised before the agency. Appellants then argue that their grievances sought action by the DOC, "in order to remedy inaction on the part of MPC." They further argue that IGO does have jurisdiction over disputes related to the calculation of sentences and that the IGO accepted jurisdiction in these cases. If the DOC, in calculating release dates, acted pursuant to instructions that are invalid, then according to appellants, DOC's action is of no effect. Finally, appellants point out that, with exceptions not here relevant, the Secretary of the Department of Public Safety and Correctional Services "may exercise any power, duty, responsibility, or function of any unit, unit head, or appointing officer in [the Department]." C.S. § 2–113(a). Thus, the Secretary has the power to grant appellants the relief they seek.

### *Preservation of jurisdiction issue*

With respect to preservation, appellants acknowledge the decision in *Montgomery County v. Supervisor of Assessments*, 274 Md. 116, 332 A.2d 897 (1975), in which the Court of Appeals held that the question of subject matter jurisdiction of the Tax Court, an administrative agency, could be raised for the first time on judicial review, even though not raised before

the agency. *Id.* at 119, 332 A.2d 897.[9] Appellants argue, however, that the case really involved a standing issue, i.e., whether the Montgomery County Council had standing to appeal to the Tax Court, and that subsequent cases have narrowly circumscribed the concept of jurisdiction.

Appellants point to *Carey v. Chessie Computer Services,* 369 Md. 741, 802 A.2d 1060 (2002). In *Carey,* the Court of Appeals, when discussing jurisdiction in the context of acts that are void as compared to acts that are voidable, stated that lack of jurisdiction which makes an act void is limited to lack of fundamental jurisdiction over the subject matter, i.e., no power to act exists with regard to the subject matter. *Id.* at 755, 802 A.2d 1060.

■ Appellants argue that the DOC should have rejected MPC's action because it was void. We disagree because the MPC clearly had jurisdiction over the subject matter and had the authority—the sole authority—to decide the issue. The DOC had the authority to execute the decision. In the context of preservation, the question before us is whether the extent of its power to act may be raised for the first time on appeal.

Appellants also rely on cases discussing jurisdiction in the context of the need to exhaust administrative remedies, which state that exhaustion is not required when an agency is "palpably without jurisdiction." *See Maryland Commission on Human Relations v. Mass Transit Administration,* 294 Md. 225 235, 449 A.2d 385 (1982) (quoting 2 Kenneth C. Davis, Administrative Law Treatise, § 20.01 at 56 (1st ed.1958)). The concept was further explained in *Heery International v. Montgomery County,* 384 Md. 129, 144–45, 862 A.2d 976 (2004). In that case, the Court stated that fundamental jurisdiction, for purposes of challenging the need to exhaust administrative remedies, means that the agency "must lack clear authority to adjudicate a given class of claims."

---

**9.** This Court, citing *Montgomery County,* reached the same conclusion in a matter involving the Tax Court. See *Crofton Partners v. Anne Arundel County,* 99 Md.App. 233, 248, 636 A.2d 487 (1994).

We do not have an exhaustion issue before us because, as between appellants and the DOC, an administrative remedy was pursued. Nevertheless, we regard the cases cited as relevant and helpful to the question of preservation. The scope of the DOC's authority was limited to applying the credits in accordance with the MPC's determination. To that extent, it acted within its jurisdiction. The question whether it had jurisdiction to go beyond that goes to its fundamental jurisdiction, however, because as we shall explain below, it was palpably without authority to do so. Thus, we shall address the scope of the DOC's authority, even though raised for the first time on judicial review.

### Jurisdiction issue

■ We conclude that the inmate grievance procedure is not available to address appellants' issue on the merits. The Inmate Grievance Office, formerly known as the Inmate Grievance Commission, was created in 1971. Ch. 210, Acts of 1971. The relevant provisions now appear in C.S. §§ 10–201 through 10–210. Section 10–206(a) provides that an inmate in the custody of the DOC, who has a "grievance against an official or employee of the Division of Correction or the Patuxent Institution ... may submit a complaint to the Office...." Grievance "means the complaint of any individual in the custody of the Commissioner or confined to the Patuxent Institution against any officials or employees of the Division or the Patuxent Institution arising from the circumstances of custody or confinement." C.O.M.A.R. 12.07.01.02B.(7).

The MPC had and has the statutory authority and duty to decide whether to revoke diminution credits when it revokes mandatory supervision. *See* C.S. 7–504. The MPC had subject matter jurisdiction and the power to do so, i.e., it was within its statutory authority, even if we assume, arguendo, that it erred because it was required to exercise discretion in each case and failed to do so.

The DOC had no discretionary authority in 1990 with respect to the application of diminution credits if the MPC revoked mandatory supervision, and appellants do not contend

otherwise. *See* C.S. § 7–504(b)(1) (Commissioner presiding at a mandatory supervision revocation hearing may revoke diminution credits).[10] Appellants do not contend that the DOC erred in mathematically applying the MPC's determination. Thus, the DOC did what it was supposed to do, and all it could do. Appellants' complaints on the merits are not "against any officials or employees" of the DOC; they are against the MPC. *See Watkins,* 377 Md. 34, 831 A.2d 1079 (2003).

In *Watkins,* the issue was whether DOC Directives governing the security classification of inmates were *ex post facto* laws. *Id.* at 36, 831 A.2d 1079. Directives are formal, written policies established by the DOC. *Id.* The Court concluded that the Directives in question were not "laws" within the meaning of the *ex post facto* prohibition. *Id.* at 45, 831 A.2d 1079.

The inmates in *Watkins* filed grievances in the IGO, and the IGO dismissed them on the ground that they were wholly lacking in merit. Id. at 41, 43 and 44, 831 A.2d 1079. *See* C.S. § 10–207(b) (the Executive Director of IGO, on preliminary review of a complaint, may dismiss it summarily if wholly lacking in merit). One of the contentions made by the inmates was that the Directives enhanced punishment by affecting parole eligibility, when applied in combination with MPC policies applicable to granting parole. *Watkins,* 377 Md. at 47, 831 A.2d 1079. The Court of Appeals stated that it need not address that contention because the IGO is authorized to hear complaints only against officials and employees of the DOC and Patuxent Institution. *Id.* "Charges that the Parole Commission is acting to limit Appellants' parole opportunities must arise in proceedings conducted in a forum where such controversies can be resolved." *Id.*

The complaints before us are analogous. It is the discretionary action, or the non-action of, the MPC that appellants attack, not the ministerial action by the DOC. We express no

---

**10.** The DOC may revoke certain diminution credits for violating rules of discipline. *See* C.S. § 3 –709.

opinion as to what remedy, if any, is available to appellants to review the actions taken by the MPC.

**JUDGMENT AFFIRMED.  COSTS TO BE PAID BY APPELLANTS.**