949 A.2d 85

**Hamza HALICI, et al.**

v.

**CITY OF GAITHERSBURG, Maryland, et al.**

**No. 1048, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 30, 2008.

240

Stephen J. Orens (Rebecca D. Walker, Casey L. Moore, Miles & Stockbridge, P.C., on brief), Rockville, for appellant.

Cathy G. Borten, Gaithersburg, for appellee.

Panel: EYLER, DEBORAH S., MEREDITH and RAYMOND G. THIEME, JR. (Ret'd, Specially Assigned) JJ.

DEBORAH S. EYLER, J.

The Mayor and Council of the City of Gaithersburg, sitting as the Historic District Commission ("HDC"), the appellee, denied Historic Area Work Permit Application No. 37–E, filed by Halici, Inc. ("Halici"), the appellant. The application sought to allow demolition of "the Talbott House," owned by Halici and located at 309 North Frederick Avenue, in the City. The denial resulted from a tie vote of the HDC.

In the Circuit Court for Montgomery County, Halici brought an action for judicial review, challenging the HDC's decision. The circuit court affirmed the agency action.

Halici presents four questions for review in this Court, which we have consolidated and rephrased as follows: [1]

---

1. The questions as phrased by Halici were as follows:
 "I. Whether each members [sic] of the City of Gaithersburg Historic District Commission, as presently constituted, is qualified under Article 66B section 8.03 of the Maryland Code?
 A. Whether a member of the City of Gaithersburg Historic District Commission who lacked the requisite qualification at the time of appointment to the Historic District Commission under Article 66B, section 8.03 of the Maryland Code, is eligible to serve on the Historic District Commission?
 II. Whether the statutory denial of Historic Area Work Permit 37–E by the City of Gaithersburg History District Commission was based upon substantial evidence of record?

I. Was the HDC unlawfully constituted under Md.Code (1957, 2003 Repl.Vol.) section 8.03 of Article 66B when it denied the permit application, and, if so, does that render invalid the HDC's decision to deny the permit application?

II. Was there substantial evidence in the agency record to support the HDC's denial of the permit application?

For the following reasons, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

The Talbott House was built in 1921, in what was then the subdivision of Realty Park, in the heart of Gaithersburg. It is a two-story modified bungalow style house. Originally, it was zoned R–90, which is a residential classification. It was used as a residence until 1962. At that time, the block on which it is located—North Frederick Avenue between Maryland and Montgomery Avenues—was rezoned C–1 (Local Commercial).

Halici purchased the Talbott House in 1978, as an investment and for commercial use. Since then, it has been used as a hair salon. At the times relevant to this case, "The Hair Bar Salon" operated its business there. Hamza Halici ("Mr. Halici") is the sole shareholder of Halici, which owns and operates The Hair Bar Salon.[2]

In 1986, Halici purchased the adjacent property at 307 North Frederick Avenue. Pursuant to a subsequent subdivision rezoning, the two addresses were combined into one tract of land, designated as plot 85 in the Montgomery County land records. Halici has since treated 307 North Frederick Avenue and the Talbott House as one tract for purposes of valuation

_____

A. Whether the denial of Historic Area Work Permit 37–E by the City of Gaithersburg Historic District Commission was an impermissible change of mind under Maryland [sic]?"

**2.** It appears that The Hair Bar Salon previously may have been owned by another corporate entity, Hair Bar Ltd. (also owned by Mr. Halici). Nonetheless, in Halici's 2000 income statement, discussed *infra*, it treated The Hair Bar Salon's income and expenses as its own.

and sale (307 North Frederick Avenue and the Talbott House, together, the "Property").

In March of 1989, Halici filed a petition before the HDC seeking to have the Talbott House designated as a local historic site.[3] Although the petition asked that the historic designation for the Talbott House be granted conditionally, it was granted fully, with no conditions. The parties do not dispute that the HDC had the right, on its own motion, to designate the Talbott House a local historic site unconditionally. As a result of the designation, Halici received certain municipal tax credits for renovations it undertook on the Talbott House. Halici demolished the structure that occupied 307 North Frederick Avenue; that part of the Property has remained unimproved to this date. About ten years later, the City enacted the Frederick Avenue Corridor Master Plan, which rezoned the area in which the Property is located to the Corridor Development ("CD") zone.

In 1999, Halici submitted Historic Area Work Permit Application 37C ("HAWP–37C"), seeking permission to demolish the Talbott House on the ground of substantial financial hardship. The Historic Preservation Advisory Committee ("HPAC") considered the application and recommended unanimously that it be denied. Notwithstanding that negative review, the application was granted by resolution of the HDC on June 5, 2003. The resolution was conditional, in that it provided that the demolition permit would not be issued "until an approved site development plan for new construction, which adheres to the Frederick Avenue Corridor Design Code and follows the development review process for the CD (Corridor Development) Zone, has been awarded for" the Property.

The approval for HAWP–37C did not specify a time frame for the completion of work. Pursuant to section 24–228.1(f) of the City of Gaithersburg Code ("Code"), the absence of a time frame created a presumption of a one-year time period. On

---

**3.** Halici had planned to restore both 307 North Frederick Avenue and the Talbott House together. That plan did not come to fruition.

October 20, 2003, the HDC voted to amend the approval to allow for a two-year time frame for completion, *i.e.*, until June 2, 2005. By that date, Halici had not commenced work. It sought a one-year extension of HAWP–37C, until June 2, 2006, which was granted. When it did not complete work by that date, HAWP–37C expired. (In fact, work was never begun.)

Within days after HAWP–37C expired, Halici filed a new application: Historic Area Work Permit application 37E ("HAWP–37E"). The ultimate decision to deny that application is the subject of this appeal.

On July 6 and August 3, 2006, the HPAC held a public hearing on HAWP–37E. Testimony was given by witnesses for Halici, in favor of the application, and by witnesses opposed to the application. At the conclusion of the August 3 hearing, the HPAC members made oral findings on the record and voted unanimously to recommend that the HDC deny the application. On October 9, 2006, the HDC held a public hearing on the application. Testimony was taken at that hearing as well.

On January 2, 2007, the HDC held a "policy discussion" and vote on the application. Three of the six members of the HDC voted to deny the application and three voted to approve it. Because the vote was tied, the application failed. On January 16, 2007, the HDC issued a written opinion stating the reasons for the votes against and the votes in favor of HAW P–37E.

As noted above, Halici pursued an action for judicial review in the circuit court. In a reply memorandum, Halici asserted for the first time that one member of the HDC did not meet the eligibility requirements to sit on that commission. The circuit court rejected that argument on its merits and further ruled that the HDC's decision was supported by substantial evidence. This appeal followed.

We shall include additional facts as necessary to our discussion of the issues.

## DISCUSSION

### I.

The City of Gaithersburg's zoning authority is derived from Md.Code Art. 66B. *See Trail v. Terrapin Run, LLC,* 403 Md. 523, 943 A.2d 1192 (2008) (Art. 66B empowers local governments to impose zoning regulations). Sections 8.01 *et seq.* of that article govern "Historic Area Zoning." The City's HDC was created pursuant to section 8.03(a), which, with respect to the qualifications of members, provides in pertinent part:

(2)(ii) Each member of a historic district commission ... shall possess a demonstrated special interest, specific knowledge, or professional or academic training in such fields as history, architecture, architectural history, planning, archeology, anthropology, curation, conservation, landscape architecture, historic preservation, urban design, or related disciplines.

\*　　\*　　\*　　\*　　\*　　\*

(iv) Each local jurisdiction that creates a historic district commission ... under this subtitle shall establish and publicly adopt criteria for qualifying as a member of the commission.

Article 66B, section 8.03(a)(2)(ii) and (iv).

The City's Historic Preservation Ordinance provides:

*Historic district commission.* The mayor and city council shall appoint a commission of six (6) members, all of whom are qualified consistent with the provisions of Article 66B, § 8.03, MD. CODE ANN., as established by the following criteria:

(a) Persons who have previously served on a local legislative body exercising planning and zoning powers; or

(b) Persons who have previously served on a planning commission, board of appeals or historic preservation commission or advisory body; or

(c) Persons who have demonstrated special interest, participation, specific knowledge or professional training in such fields as history, architecture, architectural history,

planning, archaeology, anthropology, curation, conservation, landscape architecture, historic preservation, urban design or related disciplines;

and agree to serve on this commission and a majority of whom are residents of the city.... The mayor and members of the city council shall be eligible for appointment to the commission, provided they possess the qualifications described hereinabove....

Code § 24–224.

At all times relevant to this case, the City's HDC was comprised of the Mayor and the five members of the City Council.

### (a)

Halici contends that the HDC was not constituted lawfully because one of its members, Michael A. Sesma, did not meet the qualification criteria established in section 8.03(a)(2)(ii) of Article 66B when he was appointed, in 2005.[4] The City maintains that this issue is not properly before this Court on appellate review because Halici did not raise it before the HDC. On the merits, the City asserts that Sesma was qualified when the vote on HAWP–37E was taken, which was sufficient, and, even if he was not qualified, the HDC's decision still stands under the *de facto* officer doctrine.

On the preservation issue, Halici responds that the question of Sesma's qualifications and thus the HDC's authority, as comprised, to render a decision is an issue of "subject matter jurisdiction" that can be raised at any time. In support, he cites *Nguyen v. U.S.*, 539 U.S. 69, 123 S.Ct. 2130, 156 L.Ed.2d 64 (2003), for the proposition that this Court should consider "at least on direct review, violations of a statutory provision that 'embodies a strong policy concerning the proper administration of judicial business' even though the defect was not raised in a timely manner." *Id.* at 78, 123 S.Ct. 2130 (quoting

---

4. The parties do not dispute that the other five members of the HDC were qualified for appointment.

*Glidden Co. v. Zdanok,* 370 U.S. 530, 536, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) (plurality opinion of Harlan, J.)).

For the following reasons, we conclude that the question whether Mr. Sesma was not qualified to sit on the HDC when he was appointed to that body and/or when it rendered its decision in this matter, and the consequences, if any, of a determination that he was not so qualified are not properly before this Court for review. Accordingly, we shall not address the merits of the argument.

 On appellate review of the decision of an administrative agency, this Court reviews the agency's decision, not the circuit court's decision. *Anderson v. General Cas. Ins. Co.,* 402 Md. 236, 244, 935 A.2d 746 (2007). Our scope of review is narrow. *Id.; Finucan v. Maryland State Bd. of Physician Quality Assurance,* 151 Md.App. 399, 411, 827 A.2d 176 (2003), *aff'd,* 380 Md. 577, 846 A.2d 377, *cert. denied,* 543 U.S. 862, 125 S.Ct. 227, 160 L.Ed.2d 103 (2004). It is " 'limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376 (1999) (quoting *United Parcel Serv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226 (1994)). The reviewing court " 'must not itself make independent findings of fact or substitute its judgment for that of the agency.' " *Maryland–National Capital Park and Planning Comm'n v. Anderson,* 395 Md. 172, 180–81, 909 A.2d 694 (2006) (quoting *Balt. Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985)). Rule 7–208(c) reinforces this point by barring the admission of "[a]dditional evidence in support of or against the agency's decision . . . unless permitted by law."

 Ordinarily, a court reviewing the decision of an administrative agency " 'may not pass upon issues presented to it for the first time on judicial review. . . .' " *Schwartz v. Maryland Dept. of Natural Resources,* 385 Md. 534, 556, 870

A.2d 168 (2005) (quoting *Brodie v. MVA,* 367 Md. 1, 4, 785 A.2d 747 (2001)). Accordingly, " '[a] party who knows or should have known that an administrative agency has committed an error and who, despite an opportunity to do so, fails to object in any way or at any time during the course of the administrative proceedings,' may not thereafter complain about the error at a judicial proceeding." *Cremins v. County Comm'rs of Washington County,* 164 Md.App. 426, 443, 883 A.2d 966 (2005) (quoting *Cicala v. Disability Review Bd. for Prince George's County,* 288 Md. 254, 261–62, 418 A.2d 205 (1980)); see also Rule 8–131(a). The failure to raise an issue before the administrative agency is a failure to exhaust administrative remedies and an improper request for " 'the courts to resolve matters *ab initio* that have been committed to the jurisdiction and expertise of the agency.' " *Chesley v. City of Annapolis,* 176 Md.App. 413, 427 n. 7, 933 A.2d 475 (2007) (quoting *Delmarva Power & Light Co. v. Public Serv. Comm'n of Md.,* 370 Md. 1, 32, 803 A.2d 460, *motion for reconsideration granted on other grounds,* 371 Md. 356, 809 A.2d 640 (2002)), *cert. denied,* 403 Md. 305, 941 A.2d 1105 (2008).

The exceptions to the requirement for issue preservation are rare. One such exception is a challenge to the statutory authority of the administrative body to take the action at issue. In *Harbor Island Marina, Inc. v. Bd. of County Comm'rs of Calvert County,* 286 Md. 303, 407 A.2d 738 (1979), Calvert County had denied a marina's application for a zoning revision. At the same time that the marina sought judicial review of that decision in the circuit court, it brought an action for declaratory judgment alleging, for the first time, that Calvert County lacked statutory authority to regulate the use of navigable waters within its borders. The Court of Appeals characterized the challenge as "a direct attack upon the power or authority ... of the legislative body to adopt the legislation from which relief is sought," which is a purely legal issue, and held on that basis that a reviewing court could consider it at any time, even if it were not raised before the agency. *Id.* at 308–09, 407 A.2d 738.

In *County Council of Prince George's County v. Dutcher*, 365 Md. 399, 780 A.2d 1137 (2001), the Court of Appeals characterized a similar challenge as an issue of "subject matter jurisdiction," which "may be raised at any time, including initially on appeal." *Id.* at 405–06 and 405 n. 4, 780 A.2d 1137 (citing *Derry v. State*, 358 Md. 325, 334, 748 A.2d 478 (2000)). The Court proceeded *sua sponte* to decide whether, under Md.Code (1957, 1997 Repl Vol.) Article 28, section 7–117, the Prince George's County District Council had the authority to review the County planning board's grant of approval for a preliminary subdivision plan. After examining the language of section 7–117 and the overall scheme of Article 28, the Court concluded that the District Council was without power to review the planning board's approval of a subdivision plan, and so its actions were a nullity. *See also County Council for Montgomery County v. Supervisor of Assessments of Montgomery County*, 274 Md. 116, 119, 332 A.2d 897 (1975) (whether the Montgomery County Council had a right to appeal to the Maryland Tax Court under Md.Code (1957, 1969 Repl.Vol.) Article 81, section 256(a), was "a question of the jurisdiction of [the Tax Court that,] even though not tried and decided below and neither briefed nor argued, may be raised by this Court, *sua sponte*, as an exception to the general rule . . . .").

In *Harbor Island Marina* and *Dutcher*, the jurisdictional issue decided by the Court of Appeals was a question of law: that is, whether the administrative agency's exercise of jurisdiction over a matter was, at the very least, allowed by statute. When, by contrast, the issue concerns the validity of the agency action in "how the statute has been applied," the Court has held that the issue must have been raised before the administrative agency to avoid waiver. *Ins. Comm'r of the State of Md. v. Equitable Life Assurance Society of the U.S.*, 339 Md. 596, 619, 664 A.2d 862 (1995). *See Harbor Island Marina, supra,* 286 Md. at 308, 407 A.2d 738. Moreover, when the challenge to the law or action " 'as a whole involves the need for some factual exploration,' " the issue must be raised before the administrative agency to preserve it for

judicial review by the circuit court. *Prince George's County v. Ray's Used Cars*, 398 Md. 632, 653, 922 A.2d 495 (2007) (quoting *Montgomery County v. Broadcast Equities, Inc.*, 360 Md. 438, 457, 758 A.2d 995 (2000) (further internal citation omitted)). In *Ins. Comm'r of the State of Md. v. Equitable Life Assurance Society of the U.S.*, *supra*, the Court of Appeals held that the circuit court erred by deciding whether certain portions of Maryland's Insurance Article were in conflict with Article 46 of the Maryland Declaration of Rights instead of allowing the Insurance Commissioner to consider the issue first. The Court of Appeals explained:

> [W]here a constitutional challenge to a statute, regardless of its nature, is intertwined with the need to consider evidence and render findings of fact, and where the legislature has created an administrative proceeding for such purposes, this Court has regularly taken the position that the matter should be initially resolved in the administrative proceedings.

339 Md. at 623–24, 664 A.2d 862. *See also Gingell v. County Comm'rs*, 249 Md. 374, 376–77, 239 A.2d 903 (1968); *Poe v. Baltimore City*, 241 Md. 303, 307–11, 216 A.2d 707 (1966).

Also instructive is the Court of Appeals decision in *Carey v. Chessie Computer Services, Inc.*, 369 Md. 741, 802 A.2d 1060 (2002). In that case, the Court distinguished a lack of "fundamental jurisdiction," *i.e.*, the " 'power to act with regard to a subject matter which is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers,' " which renders the action of a court or agency "intrinsically void," from a lack of jurisdiction that merely renders the action "erroneous and therefore voidable." *Id.* at 756, 802 A.2d 1060 (quoting *Pulley v. State*, 287 Md. 406, 416, 412 A.2d 1244 (1980) (further citations omitted)). The Court observed that, " 'where a statute directs the court or agency, under certain circumstances, to exercise its jurisdiction in a particular way, or to rule in favor of a respondent, or to dismiss the case, and the tribunal erroneously refuses to do so because of an error of statutory interpretation or an error of fact' " an appeal of that action does not concern the

" 'subject matter jurisdiction of the trial court or the agency.' "
*Carey, supra,* 369 Md. at 757, 802 A.2d 1060 (quoting *Board of License Comm'n. v. Corridor Wine Inc.,* 361 Md. 403, 418, 761 A.2d 916 (2000)).

On the facts presented in *Carey,* the Court held that the circuit court's grant of summary judgment was voidable on appeal, but not void *ab initio:* that is, the court's failure to remand a case to the Workers' Compensation Commission after the Subsequent Injury Fund had been impleaded—as the court was required to do under Md.Code (1957, 1999 Repl.Vol.) section 9–807(b) of the Labor and Employment Article—did not render the court's subsequent grant of summary judgment a nullity or deprive the court of subject matter jurisdiction. *See also Downes v. Downes,* 388 Md. 561, 575, 880 A.2d 343 (2005) ("The proper balance, we have concluded, is to view jurisdiction in terms of whether the court is given the power to render a judgment over that class of cases within which a particular one falls." (internal quotation omitted)).

In the case at bar, Halici's appellate challenge to the qualifications of one of the members of the HDC is not an issue of "subject matter jurisdiction." This challenge is not an attack upon the HDC's "power to act with regard to a subject matter which is conferred by the sovereign authority." *Carey, supra,* 369 Md. at 756, 802 A.2d 1060 (internal quotation omitted). Rather, like the respondent in *Carey,* Halici is challenging the City's application of a statute, section 8.03(a) of Article 66B, that qualifies Sesma to sit on the HDC if he has shown a "demonstrated special interest" in an academic field related to historic preservation. A challenge to the authority of the agency to act, based on a member's alleged failure to meet the statutory qualifications required to serve as an agency member, is not a challenge to the agency's fundamental "subject matter jurisdiction" as that term is used in Maryland jurisprudence.

Furthermore, Halici's challenge clearly is distinguishable from the jurisdictional issues raised in *Harbor Island Marina* and *Dutcher.* In this argument, Halici is challenging Sesma's qualifications under Article 66B as applied. Halici asked the

circuit court, and now asks this Court, to conduct a detailed factual inquiry into Sesma's qualifications: namely, did Sesma possess the requisite "demonstrated special interest, specific knowledge, or professional or academic training in such fields as history, architecture, architectural history . . . [etc.]" under section 8.03(a) of Article 66B, either at the time he was appointed or the time he rendered his decision on HAWP–37E. This question of fact would require the taking of additional evidence beyond the record before the agency at the time of its decision and contrary to the dictates of Rule 7–208(c) (barring the admission of "[a]dditional evidence in support of or against the agency's decision . . . unless permitted by law"). In short, the inquiry would be beyond the very narrow scope of review, discussed *supra*, afforded to the circuit court and this Court to determine whether an agency's findings were supported by substantial evidence and whether its conclusions of law were erroneous.

 We note also that, when an administrative agency has primary jurisdiction over a controversy, as is the case here, the parties ordinarily must await a final administrative decision before resorting to the courts. *State v. Bd. of Contract Appeals*, 364 Md. 446, 457, 773 A.2d 504 (2001). This is so because, in general, "statutes should be interpreted in the first instance in contested cases by the administrative agency, especially in those instances in which the agency possesses specialized knowledge or expertise regarding the underlying subject matter." *Heery International, Inc. v. Montgomery County*, 384 Md. 129, 145, 862 A.2d 976 (2004) (citing *State Comm'n on Human Relations v. Freedom Express/Domegold, Inc.*, 375 Md. 2, 19–20, 825 A.2d 354 (2003)). Such a process "not only provides the court with a complete record and hopefully a rationalized interpretation, but also aids in judicial economy . . . ." *Id.* The only exception is when the agency is "palpably without jurisdiction," such as "a probate court . . . attempting to try someone for a criminal offense." *Freedom Express/Domegold, supra*, 375 Md. at 19–20, 825 A.2d 354 (internal quotation omitted). "Therefore a party wishing to circumvent the administrative process must demonstrate that

an agency is operating indisputably beyond its authority and distinctly outside its fundamental jurisdiction." *Heery International,* 384 Md. at 145, 862 A.2d 976. To be sure, in this case, there is no contention that Halici failed to obtain a final administrative decision on its application before pursuing judicial review. Nevertheless, the reasoning behind these decisions reinforces the conclusion that Halici may not circumvent the administrative process by keeping mum before the agency about an issue requiring factual development, and then invoking "subject matter jurisdiction," on judicial and appellate review, as a talisman to avoid the principles of error preservation and exhaustion of administrative remedies.

Halici's reliance on *Nguyen v. U.S., supra,* is misplaced. In *Nguyen,* the petitioner contended that a panel of the Ninth Circuit Court of Appeals that had affirmed his federal narcotics conviction was unlawfully composed because, contrary to the dictates of Title 28 U.S.C. § 292(a), one of the panel judges was not qualified as a judge under Article III of the United States Constitution. The petitioner raised the issue for the first time in his *certiorari* petition to the Supreme Court. The Supreme Court granted *certiorari,* vacated the panel's decision, and remanded for a new proceeding. In a 5–4 decision, the Court considered the issue raised by the petitioner "even though the defect was not raised in a timely manner" because the appointment of a non-Article III judge was a direct violation of section 292(a), which " 'embodies a strong policy concerning the proper administration of judicial business.' " 539 U.S. at 78, 123 S.Ct. 2130 (quoting *Glidden, supra,* 370 U.S. at 536, 82 S.Ct. 1459). The Court recognized that, ordinarily, the petitioner's assignment of error would not be preserved due to his failure to raise the issue before the Ninth Circuit panel. It held, however, that "to ignore the violation of [section 292(a) ] would incorrectly suggest that some action (or inaction) on petitioners' part could create authority Congress has quite carefully withheld." *Id.* at 80, 123 S.Ct. 2130.[5]

---

**5.** The dissent in *Nguyen* would have applied a plain error analysis, under Federal Rule of Criminal Procedure 52(b), which provides for the

In *Nguyen*, the Court set aside the ordinary rules of error preservation to address a purely legal question: the consequence, if any, of a non-Article III judge sitting on a court of appeals panel. Here, Halici asks that the ordinary rules of error preservation and waiver be set aside so the reviewing court can conduct what necessarily is a fact-intensive investigation into the qualifications of an agency member. His request is contrary to the well-established precedent, discussed *supra*, holding that as-applied challenges to the statutory validity of an administrative agency's actions and constitutional challenges involving a question of fact must be raised before the agency to prevent waiver.

Halici had ample opportunity to investigate and challenge the individual qualifications of the HDC's members during the pendency of the administrative proceedings.[6] His challenge to Sesma's qualifications under section 8.03(a) for the first time in a reply memorandum before the circuit court was untimely. The issue of Sesma's qualification *vel non* for membership on the HDC was waived. It was not properly before the circuit court, on judicial review, and it is not properly before this Court, on appellate review.

### (b)

 Halici also contends that Code section 24–224 conflicts, facially, with Article 66B, section 8.03(a), because it "categorically provides" that the Mayor and members of the

---

consideration of an error not objected to at trial when that error " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at 84, 123 S.Ct. 2130 (Rehnquist, C.J. dissenting) (quoting *United States v. Cotton*, 535 U.S. 625, 631–32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)).

6. The situation here is somewhat akin to that of a litigant who fails to make a motion to recuse before a presiding judge in circuit court, thereby waiving the objection on appeal. *See Miller v. Kirkpatrick*, 377 Md. 335, 358, 833 A.2d 536 (2003) ("A timely motion ordinarily is not one that represents the possible withholding of a recusal motion as a weapon to use only in the event of some unfavorable ruling." (Internal quotation omitted)); *see also Surratt v. Prince George's County*, 320 Md. 439, 468, 578 A.2d 745 (1990).

City Council are eligible to serve on the HDC, even when they do not meet the eligibility requirements of section 8.03(a).

Our primary goal in construing a statute is to ascertain the legislature's intent. *Clipper Windpower, Inc. v. Sprenger*, 399 Md. 539, 553, 924 A.2d 1160 (2007). "Ordinary, popular understanding of the English language dictates interpretation of the plain language of the text of a statute. . . . If the statutory language is clear and unambiguous, we need not look beyond the statute to determine the Legislature's intent." *Stachowski v. Sysco Food Services of Baltimore, Inc.*, 402 Md. 506, 516, 937 A.2d 195 (2007) (citation omitted).

Halici's reading of Code section 24–224 is plainly wrong. The ordinance states clearly that the Mayor and members of the City Council are eligible to serve on the HDC *"provided they possess the qualifications described hereinabove."* (Emphasis added.) Those qualifications "hereinabove" mirror the qualifications outlined in Article 66B. Thus, the Code requires that each member of the HDC possess the qualifications mandated by Article 66B. Section 24–224 does not contradict Article 66B on its face; the HDC was not constituted improperly in this respect when it denied permit application HAWP–37E.

## II.

Next, Halici contends that the HDC applied an erroneous, heightened legal standard in evaluating its application and that its decision was not based on substantial evidence of record but, instead, was an impermissible change of mind from the HDC's approval of HAWP–37C in 1999.

Code section 24–228.2(d) states that the HDC "may approve a historic area work permit if the structure is a deterrent to a major improvement program of substantial benefit to the public or its retention would either cause substantial financial hardship to the owner or its retention would not be in the best interests of the citizens in the community." There is no dispute that the Talbott House was neither a "deterrent to a major improvement program" nor that "its retention would

not be in the best interests of the citizens." Instead, the HDC's decision rested on the premise that Halici failed to prove that retention of the structure would "cause [it] a substantial financial hardship."

In support of HAWP–37 E, Halici submitted to the HPAC and the HDC many of the same documents it had attached to the application for HAWP–37C, including: Letter dated March 3, 1989, from Mr. Halici to the HDC, seeking designation of the Talbott House as a "historic resource" and thereby making it eligible for a 10% municipal property tax credit for renovations; Appraisal dated October 5, 1995, by Peter A. Moholt, MIA, valuing 307/309 North Frederick Avenue at $600,000, including the Talbott House structure; Accounting Statement dated August 25, 1997, prepared by Michael Kane, CPA, showing that Halici purchased 309 North Frederick Avenue in 1978 for $178,716 and 307 North Frederick Avenue in 1986 for $304, 352, and that Halici spent $169,044 on physical improvements to the Talbott House; Letter dated July 23, 1999 from architect Steven J. Karr, AIA, to Halici opining that it would not be economically feasible to modify the Talbott House for use as a restaurant given the cost of structural modifications; Report on "Investment Actual Value" dated September 29, 1999, in which appraiser H. Winfree Irvine Jr. states that, as of the report's date, Halici received $ 30,720 annually in rent from the Property ($14,400 from the Hair Bar Salon and $16,320 from the vacant lot at 307 North Frederick Avenue (which was leased to a retailer of outdoor playground equipment)), and that a 10% annual return on investment would yield $48,307 (based on Halici's purchase price for both lots), $41,000 (based on a 1999 tax assessment valuation of $410,000 for both lots), $61,682 (based on Halici's purchase price and cost of improvements for both lots), or $74,637 (based on Halici's purchase price, cost of improvements, and "other costs" including engineering fees, legal fees, and permit fees for both lots); Income Statement for "Halici T/A Hair Bar, Inc." for the year ending December 31, 2000, in which Halici claimed to receive $302,593 in gross income with expenses of $303,501 (including $46,520 for "officers" salaries

and $107,511 in "other" salaries) yielding a net loss of $908; Letter dated August 28, 2001, from Construction Services Unlimited, Inc., a construction contractor, to Mr. Halici, in which Construction Services Unlimited opined that it would cost $433,655 to renovate fully and expand the Talbott House (both floors) for use in a retail or professional office space capacity; Memorandum dated June 13, 2002, from Cliff Lee, Senior Plans Examiner for the City, to the City Manager, stating that Lee had examined the Talbott House and concluded that, under the City's building code, it could continue to be used by a hair salon or as a professional office space without significant repairs, but that any other use—such as retail— would require major renovations costing approximately $175,000 to $400,000; Appraisal dated January 2001, by Moholt, valuing the Property at $448,000 "as is" and $595,000 if the Talbott House were demolished and replaced with a retail development, which would be its "highest and best use."

In addition, Halici submitted an updated Appraisal by Moholt, dated May 9, 2006, valuing the Property at $630,000 "as is" and $900,000 if the Talbott House were demolished. At a July 6, 2006 hearing before the HPAC, counsel for Halici claimed that, after HAWP37C was approved on June 5, 2003, it had entered into a contract of sale for the Property, but that the potential purchaser withdrew from the contract. Counsel also stated that it had received from Commerce Bank a letter of interest in the Property without the Talbott House, but Commerce Bank was unable to secure City approval for its proposed site plan before HAWP–37C expired on June 5, 2006. Finally, counsel informed the HPAC that its former tenant for 307 North Frederick Avenue (the unimproved lot) had vacated the premises in 2004, and that Halici had placed a "for rent" sign on the unimproved lot portion of the Property.

Subsequent to the July 6, 2006 HPAC meeting, Halici sent a letter dated July 31, 2006, to the HPAC, reporting that it had a net income of $16,319 in 2004 and $16,952 in 2005 from the Property (as rent from the Hair Bar Salon). Halici refused a request by the HPAC for a more detailed listing of expenses— including the salary it pays to Mr. Halici—and income for

years 2004 and 2005. The HPAC considered HAWP–37E further at an August 3, 2006 hearing. A number of committee members expressed concern about Halici's lack of financial disclosure. As one member stated, "we don't know whether Mr. Halici himself took any salary [from Halici] or if he took a salary whether it was $2 or 2 million dollars and that would be an expense [on Halici's 2004 and 2005 income statements]."

Another committee member stated: "The applicant has had a substantial period of time to improve the property or find a buyer or find a new tenant without the restriction of retaining the house and has not made anymore progress then [sic] they did under the restriction. And so I do not find that the evidence meets the burden of proving that the retention of the house provides a substantial burden to the applicant." Still another committee member stated that he "had not heard any differentiation on this particular historic property from a number of other historic properties that this Committee has looked at and have been improved at considerable expense by the owners and are now profitable and successful organizations and are providing income for the owners."

Based on these "findings," the HPAC members voted unanimously to recommend that the HDC deny Halici's renewed application. The HDC held its own public hearing on HAWP–37E on October 9, 2006. Peter Moholt testified to the veracity of his updated Appraisal of May 9, 2006. Brian Sheehan of GMB Associates testified that he had acted as Halici's real estate broker for the Property for the past one and one-half years. Sheehan stated that he had tried to market the Property primarily to financial institutions, that Commerce Bank had signed a letter of interest before HAWP–37C expired, and that no bank with which he had spoken was interested in purchasing the Property with the Talbott House on it. Seven members of the public spoke at the hearing; all opposed demolition of the Talbott House.

On January 2, 2007, the HDC discussed HAWP–37E further and took a vote. The vote on a motion to approve the application was tied, 3–3, resulting in a denial. On January

16, 2007, the HDC issued a written Opinion stating that the "three members voting against the motion did so primarily on the record before and the recommendation from [the] HPAC." The HDC made the following findings related to the denial:

2. The findings of HPAC ... made a compelling case for the denial based on a finding that the applicant had not met his burden of demonstrating substantial financial hardship. For example, the applicant presented incomplete and insufficient financial information to support the claim of substantial financial hardship. What evidence was presented demonstrated that a profitable business had been in operation throughout the applicant's ownership of the property which continues to operate profitably. There was also no evidence to indicate that this property was different from other historic resources for which reasonable uses have been found. Additionally, there was evidence that whatever hardship does exist was not related to retention of the house; the applicant had a permit to demolish the house for the past three years but failed to find a buyer or a tenant within that time....

3. The record showed that additions could be built onto the existing building creating viable and reasonable opportunities for the site.

4. Based on a review of the HPAC and HDC records, including public hearing and testimony, there was no compelling evidence to support the applicant's claim of substantial economic hardship.

On appeal, Halici argues that the HDC erred in three respects: 1) it applied a "heightened and erroneous standard of review"—namely, instead of determining whether retention of the Talbott House would have been a "substantial financial hardship," as required under the Code, it asked whether the historic preservation of the Talbott House resulted in "a denial of all reasonable use for a property" for Halici; 2) it denied the application when, like the applicant in *Broadview Apartments Co. v. Comm. for Historical and Architectural Preservation*, 49 Md.App. 538, 433 A.2d 1214 (1981), Halici had shown that there was "no reasonable economic use" for the

historic structure; thus, its decision was arbitrary and capricious and unsupported by the record evidence; and 3) its denial of the application was an "impermissible change of mind," because "[t]here has been no change in facts or circumstances to justify the HDC reaching a different conclusion than was reached three years prior [in approving HAWP–37C]."

The City responds that the HDC did not employ a heightened standard of review and that there was substantial evidence supporting the HDC's decision for all of the reasons discussed by the HDC in denying the permit application. In response to Halici's argument that the permit denial was an "impermissible change of mind" by the agency, the City argues that the HDC's decision was not a "change of mind" because HAWP–37E was a separate and distinct application from HAWP–37C, and, in any event, the financial data provided by Halici to support HAWP–37E was old and incomplete in comparison with the data it provided to support HAWP–37C.

As discussed in section I, our review of an agency decision is limited to ensuring that its findings are supported by substantial record evidence and that its decision is not premised on an erroneous conclusion of law. " 'In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. . . .' A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record." *Maryland Aviation Admin. v. Noland*, 386 Md. 556, 571, 873 A.2d 1145 (2005) (quoting *Banks, supra*, 354 Md. at 67–69, 729 A.2d 376 (further citation omitted)). " 'Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.' " *Miller v. Comptroller of Maryland*, 398 Md. 272, 281, 920 A.2d 467 (2007) (quoting *Noland, supra*, 386 Md. at 572, 873 A.2d 1145).

 To support its argument that the HDC applied a "heightened and erroneous legal standard" in denying HAWP–37E, Halici cites *Belvoir Farms Homeowners Ass'n, Inc. v. North,* 355 Md. 259, 734 A.2d 227 (1999). In that case, the Court of Appeals distinguished between "unnecessary, unreasonable, unwarranted, or similarly-worded hardship standards," in the context of a zoning variance application in which the applicant must prove a "denial of beneficial or reasonable use," and a challenge to the constitutionality of a zoning ordinance, in which the applicant must prove a denial of " '*all* economically beneficial or productive use of land.' " (Emphasis added). *Id.* at 281–82, 734 A.2d 227 (quoting *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)). Halici maintains that the HDC applied the latter standard, requiring it to prove that it was denied *all* economically beneficial use of the Property instead of merely being denied reasonable use of the Property.

The record does not support Halici's position. Halici points only to one instance in the HDC's consideration of HAWP–37E that, in its view, shows that the HDC applied an erroneous standard. In the HDC resolution denying the permit, the three members voting for denial found that "there was no evidence to indicate that this [P]roperty was different from other historic resources for which reasonable uses have been found." [7] It is clear from the context of this finding that the HDC members reasoned that Halici's failure to differentiate the Talbott House from similar historic structures that they had seen renovated and profitably utilized was some evidence that retention of the Talbott House was not the cause of Halici's alleged financial hardship. Moreover, there are numerous instances in the record when committee members questioned Halici on its efforts to find a "reasonable use" for

---

7. Halici also points to a statement by a member of the HPAC in that body's consideration of HAW P–37C. As this statement was related to HAWP–37C in 1999, it is of little value in assessing the standard applied by the HDC on a different application in 2006.

the Property while retaining the Talbott House. There is no indication that the HDC applied a heightened standard as Halici currently contends.

**(b)**

 Halici's argument that the HDC's decision is not based on substantial record evidence and therefore is analogous to the agency decision vacated by this Court in *Broadview Apartments, supra,* is equally without merit. The applicant in *Broadview* sought a permit to demolish a vacant home that previously had been designated as an historic landmark. At the time, the Baltimore City Code required the applicant to prove a "substantial hardship" in order to obtain the permit. 49 Md.App. at 541, 433 A.2d 1214. The applicant presented numerous witnesses—including an administrator for Baltimore City's Department of Housing and Community Development at the time the application was submitted—who testified that the house would need extensive, costly renovations to be commercially viable and that the rent collected from any commercial activity after renovations would not support the debt incurred from renovation. In other words, the property would operate at a net loss each year no matter what action was taken by the owner. The only evidence contradicting the applicant's claim was a series of letters that did not take into account the cost of renovations and yet conclusorily stated that restoration of the house was economically feasible. We held that, under the circumstances, the historic district commission's denial was not supported by substantial evidence. *Id.* at 545–46, 433 A.2d 1214.

Unlike the applicant in *Broadview,* Halici was operating a profitable business at the Property. Halici's annual net income in 2004 and 2005 was approximately $16,500, most of which came from operating The Hair Bar Salon. Further, before Halici lost its tenant for the 307 North Frederick Avenue portion of the Property, in 2004, it had collected an additional sum of approximately $16,000 annually. Halici presented no evidence that it had actively marketed the 307 North Frederick Avenue portion of the Property since 2003,

beyond placing a sign somewhere on the Property stating that the lot was for rent. The record is clear that the HDC relied on the evidence showing Halici's profitability in rendering its decision.

Further, the HDC found that much of Halici's financial information showing that the Property was not sufficiently profitable "as is" was dated, incomplete, and therefore lacking in probative value. The only income statement disclosed by Halici was for the year ending December 31, 2000. While Mr. Halici's personal tax returns may not have been relevant to the inquiry, it was reasonable for the HDC to have requested more detailed income statements from Halici as they related to the entity's ownership and operation of The Hair Bar Salon, and thus to the reasonable commercial use of the Property. Specifically, the HDC wanted to ensure that Halici was operating The Hair Bar Salon in a responsible manner and paying Mr. Halici a reasonable salary. This information went to the heart of whether retaining the Talbott House on the Property was working an actual and substantial financial hardship on Halici. Its failure to disclose this information supports the HDC's finding that Halici failed to prove that retention of the Talbott House as working a substantial financial hardship on it.

Further, the HDC members voting against the application were not convinced that Halici adequately had explored other reasonable, economically feasible uses for the Property. To be sure, Halici presented evidence that any renovations for use as a retail or restaurant space would be expensive and might not be recouped by a subsequent commercial venture. Yet, the report from the City Manager's office stated that the Talbott House could continue to be used for The Hair Bar Salon or as professional office space, with few renovations. Additionally, certain members of the HDC observed that, in their experience, the owners of historic properties in a similar condition to that of Halici's Property had found reasonable, economic uses, and there was no evidence presented that the Property was unique in this regard. Finally, the HDC noted that Halici's failure under the previous demolition permit to

sell the Property or complete the demolition in three years was further evidence that it was not the retention of the Talbott House itself that was a financial hardship on Halici.

Halici presented significant evidence that it was receiving less than a 10% return on its overall investment in the Property and that the Property was worth less with the Talbott House erect. However, as discussed *supra*, we do not weigh the evidence presented to the HDC or make judgments of credibility. The HDC was presented with substantial evidence supporting its finding that Halici failed to prove that preservation of the Talbott House was a substantial financial hardship.

### (c)

Finally, we see no merit in Halici's argument that the HDC's denial of HAWP–37E was an "impermissible change of mind" from its approval of HAWP–37C. We observed recently that, under Maryland law, " '[a]n agency . . . not otherwise constrained, may reconsider an action previously taken and come to a different conclusion upon a showing that the original action was the product of fraud, surprise, mistake, or inadvertence, or that some new or different factual situation exists that justifies the different conclusion.' " *Cinque v. Montgomery County Planning Bd.*, 173 Md.App. 349, 361, 918 A.2d 1254 (2007) (quoting *Calvert County Planning Comm'n v. Howlin Realty Mgmt., Inc.*, 364 Md. 301, 325, 772 A.2d 1209 (2001)). It follows, then, that "an agency may not reconsider and reverse a decision based on a 'mere change of mind.' " *Cinque, supra,* 173 Md.App. at 361, 918 A.2d 1254 (quoting *Howlin Realty Mgmt.,* 364 Md. at 325, 772 A.2d 1209).

We note first that the HDC did not reverse itself in denying HAWP–37E, as discussed in *Cinque* and *Howlin Realty*. HAWP–37E was a separate and distinct application from HAWP–37C. Certainly, there were many similarities between the two, but the HDC's denial of HAWP–37E was not a reversal. In any event, there was sufficient evidence of changes in facts and circumstances between the time of the approval of HAWP–37C and the denial of HAWP–37E, as

discussed previously, including Halici's failure to provide more detailed income statements from the Property for years 2001–2005 and to sell the Property or demolish the Talbott House for three years, for three members of the HDC to conclude that the presence of the Talbott House on the Property was not working a financial hardship on Halici.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**