*In the Matter of Christopher Gendell, et al.*, Case No. 1156, Sept. Term 2023, Opinion filed on August 1, 2024, by Berger, J.

ZONING AND PLANNING – VARIANCES AND EXCEPTIONS – REASONABLE ACCOMODATIONS

When analyzing whether a requested variance qualifies as a reasonable accommodation under federal law, administrative agencies and reviewing courts must determine whether the requested accommodation is necessary to allow the disabled party to use and enjoy the property to an equal extent as non-disabled individuals.

ZONING AND PLANNING – VARIANCES AND EXCEPTIONS – REASONABLE ACCOMODATIONS

Evidence that a requested accommodation will improve the disabled parties' overall quality of life and, therefore, improve their ability to use and enjoy their property is not sufficient to establish that the requested variance qualifies as a reasonable accommodation under federal law.

ZONING AND PLANNING – VARIANCES AND EXCEPTIONS – CHESAPEAKE BAY CRITICAL AREA PROGRAM

Applicants seeking a variance from Anne Arundel County zoning ordinances impacting the Chesapeake Bay Critical Area must meet all requirements set forth in Section 3-1-207 of the Anne Arundel County Code and therefore, bear a heavy burden to establish that their variance request must be granted.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1156

September Term, 2023

_____

IN THE MATTER OF CHRISTOPHER
GENDELL, ET AL.

_____

Berger,
Zic,
Eyler, James R.
       (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed: August 1, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from a decision of the Board of Appeals of Anne Arundel County ("the Board") denying a request for a variance filed by appellants Christopher Gendell and Andi Gendell ("Appellants"). Appellants own property in Anne Arundel County within the Chesapeake Bay Critical Area ("Critical Area"). Appellants requested a variance from provisions of the Anne Arundel County Code ("County Code") restricting development within the Critical Area in order to install an in-ground, therapeutic lap pool on their property. The pool would be used by Appellants' two disabled sons as a therapeutic outlet to manage the symptoms of their disorders. Appellants argued that the requested pool qualifies as a reasonable accommodation that is necessary to satisfy the needs of their sons. In November 2022, Appellants filed a petition for judicial review to the Circuit Court of Anne Arundel County to appeal the Board's denial of their variance request. The circuit court affirmed the Board's decision and this timely appeal followed.

On appeal, Appellants present two questions for our review, which we rephrase slightly as follows:[1]

---

[1] Appellants' original questions presented read as follows:

1.  Did the Board of Appeals err when it denied Appellants' variance request without properly utilizing the balancing test set forth in the ADA and FHAA, which requires weighing the needs of the disabled person(s) against the costs or burdens imposed on the local governing body seeking to strictly apply zoning regulations?

I. Whether the Board erred in concluding that Appellants' variance request does not qualify as a reasonable accommodation under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA").

II. Whether the Board's decision to deny Appellants' variance request is supported by substantial evidence.

For the reasons explained herein, we affirm the Board's decision denying Appellants' variance request and affirm the judgment of the Circuit Court for Anne Arundel County.

## FACTS AND PROCEDURAL HISTORY

Appellants are residents of Anne Arundel County and the owners of property located in Annapolis, Maryland. Appellants are parents to two sons who have been diagnosed with proprioceptive disorder, also referred to as proprioceptive dysfunction ("PD"). PD is a neurological, sensory-processing disorder that impacts the brain's proprioceptive system. This system regulates the activation of different muscles, joints, and tendons in the body and informs an individual's awareness of the body's spatial position. Consequently, PD impacts an individual's body movements and control thereof.

---

2. Whether Appellants' request for a variance to allow construction of a therapeutic lap pool on their property, which would provide consistent daily therapy for their disabled children, constitutes a request for reasonable accommodation under the ADA and the FHAA for which a variance to the local zoning code should be granted?

Untreated PD can also impact an individual's ability to communicate, learn, and socialize. PD, like many neurological disorders, is a lifelong condition which will continue to impact Appellants' sons as they transition into adolescence and adulthood.

Effective treatment for PD includes regular exercise and other tactile activities that stimulate the brain's proprioceptive receptors. Appellants' sons regularly attend occupational therapy appointments to help treat the symptoms of their disorders. Appellants have utilized various therapeutic outlets in their home to help treat their sons' disorders, including rope climbing, trapeze and cocoon swinging, running, and stacking chairs or moving other heavy objects. Lap swimming also serves as an effective form of therapy. For this reason, Appellants sought to install an in-ground, therapeutic lap pool on their property.

Appellants' property is approximately 3.17 acres and is located within the Chesapeake Bay Critical Area Limited Development Area. Section 18-13-104(a) of the Anne Arundel County Code provides that, on properties within the Critical Area, "[t]here shall be a minimum 100-foot buffer landward from the mean high-water line of tidal waters, tributary streams, and tidal wetlands." County Code § 18-13-104(a). Areas that include contiguous slopes of fifteen percent or more require an expanded buffer. County Code § 18-13-104(b). "[T]he 100-foot buffer shall be expanded by the greater of four feet for every 1% of slope or to the top of the slope and shall include all land within 50 feet of the top of the slopes." *Id.* Any development on properties containing buffers or located within a buffer area must meet the requirements of Title 27 of the Code of Maryland Regulations (COMAR), which provides that a jurisdiction may authorize a "disturbance"

3

in a buffer area through the granting of a variance. County Code § 17-8-301(b); COMAR § 27.01.09.01(E)(1)(a)(ii).

Appellants' property is located entirely within an expanded buffer area. They hoped to install an 18-by-55 foot in-ground lap pool on a flattened area of their property. Installation of the proposed pool would result in 2,415 square feet of permanent disturbance within the expanded buffer area, in violation of the County Code and the COMAR. Appellants, therefore, requested a variance to allow for the construction of the pool, asserting that the therapeutic lap pool qualifies as a reasonable accommodation under the ADA and FHA. The Anne Arundel County Administrative Hearing Office denied Appellants' variance request on April 15, 2021. Appellants subsequently appealed the denial to the Anne Arundel County Board of Appeals. The Board held a two-day hearing which commenced on February 2, 2022. Prior to the hearing, the County's Office of Planning and Zoning (OPZ) sent a letter to the Board recommending that it deny Appellants' variance request.

The Board then heard extensive evidence and testimony from various witnesses and experts at the hearing. Appellants and one of their son's preschool teachers testified about the children's disabilities, symptoms, and how those symptoms affect the children's daily lives at home and in school. Appellants testified that lap swimming has served as an effective form of therapy and noted that their sons have benefited from swimming at their community pool and at the Naval Academy, the latter of which remains open during the off-season at their community pool. The Appellants' expert pediatric occupational therapist also testified, providing details about PD, its accompanying symptoms, and how

4

the disorder can be disruptive in the absence of effective treatment. She discussed the children's treatment plans and range of abilities and testified that the children have benefitted from lap swimming. Two of Appellants' neighbors also testified in support of granting the variance.

Appellants' expert civil engineer testified before the Board hearing regarding the proposed placement of the pool and its potential impacts on the surrounding environment. Appellants planned to install the pool on a relatively flat area on their property that was historically used as a badminton or tennis court which has since been removed. The engineer testified that groundwater in that area drains directly into the property's existing stormwater management pond and would continue to do so if the proposed pool were developed. He also discussed other measures to be taken to address any runoff, such as the inclusion of a membrane to capture run-off, and testified that installation of the pool would not result in any adverse environmental impacts to the Critical Area. Appellants' expert landscape architect similarly testified that the environmental impact of the project would be "minimal."

The Board also heard the testimony of Petitioners' expert in disability law. Relying on a 2016 joint policy statement released by the United States Department of Housing and Urban Development ("HUD") and the United States Department of Justice ("DOJ"),[2]

---

[2] Joint Statement of the Department of Housing and Urban Development and the Department of Justice, "State and Local Land Use Laws and Practices and the Application of the Fair Housing Act," (Nov. 10, 2016), https://www.justice.gov/opa/file/912366/download.

Appellants' expert asserted that the Board must grant a request for a reasonable accommodation if an applicant can establish that: (1) the applicant or a family member has a disability, (2) the County has knowledge of the disability, (3) a request for an accommodation was made, (4) the accommodation is necessary to provide the disabled party with an equal opportunity to use and enjoy their home, (5) the request for an accommodation was denied, and (6) the request was reasonable because it did not impose an undue hardship on the local agency. The disability law expert argued that Appellants met all of these requirements and that the benefit to the family would greatly outweigh any adverse impacts to the Critical Area Program.

Finally, the County called as a witness a zoning analyst and planner with OPZ, who recommended that the Board deny Appellants' variance request. He opined that the development of a pool on the expanded buffer was likely to adversely impact the Critical Area. The County's witness also noted that a few neighboring properties have pools despite being within a buffer area. Notably, he clarified that all of these pools were installed prior to the enactment of the Critical Area Program and, therefore, did not require a variance for installation. Moreover, the OPZ analyst testified that he did not consider the installation of a pool within the Critical Area to be a reasonable and significant use of the property.

On October 6, 2022, the Board issued a memorandum opinion denying Appellants' request for a variance.[3] The Board concluded that Appellants' request to install a pool on their property did not constitute a reasonable accommodation under the ADA and the FHA. The Board also concluded that Appellants failed to satisfy all of the requirements for a variance set forth in Section 3-1-207 of the County Code. Appellants filed a petition for judicial review with the Circuit Court for Anne Arundel County on November 1, 2022. The circuit court held a hearing on July 17, 2023 and issued its order affirming the decision of the Board on July 19, 2023. This timely appeal followed.[4]

**STANDARD OF REVIEW**

"When reviewing a decision by an administrative agency, this Court 'looks through' the decision of the circuit court, applying the same standards of review to determine whether the agency itself erred." *Matter of Homick*, 256 Md. App. 297, 307 (2022) (citing *Brandywine Senior Living at Potomac LLC v. Paul*, 237 Md. App. 195, 210 (2018)). In doing so, "[w]e are limited to evaluating whether there is substantial evidence in the record as a whole to support the agency's findings and conclusions and to determining whether the administrative decision is premised upon an erroneous conclusion of law." *Brandywine Senior Living at Potomac LLC*, *supra*, 237 Md. App. at 210 (citing *Halici v. City of*

---

[3] Four of the Board's seven members joined the majority opinion. One member of the Board concurred, in part, and another member dissented. One member did not participate in the appeal.

[4] Appellants also filed a petition for writ of *certiorari* to the Supreme Court of Maryland on November 11, 2023. The Supreme Court denied Appellants' petition on January 23, 2024.

*Gaithersburg*, 180 Md. App. 238, 248 (2008)). This Court has explained the substantial evidence test as follows:

> The substantial evidence test is defined as whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. In applying the substantial evidence test . . . we must review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are *prima facie* correct and carry with them the presumption of validity. Furthermore, not only is the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.

*Id.* at 210–11 (internal citations and quotation marks omitted).

The Supreme Court of Maryland has recognized that, "[a]lthough judicial review of an agency's factual findings is quite narrow, it is always within our prerogative to determine whether an agency's conclusions of law are correct." *Bd. of Liquor License Comm'r for Balt. City v. Kougl*, 451 Md. 507, 513–14 (2017) (quoting *Adventist Health Care, Inc. v. Md. Health Care Comm'n*, 392 Md. 103, 120–21 (2006)) (internal quotation marks omitted). It is well-established that "[t]he overarching goal of judicial review of agency decisions is to determine whether the agency's decision was made 'in accordance with the law or whether it is arbitrary, illegal, or capricious.'" *Sugarloaf Citizens Ass'n v. Frederick Cnty. Bd. of Appeals*, 227 Md. App. 536, 546 (2016) (quoting *Long Green Valley Ass'n v. Prigel Fam. Creamery*, 206 Md. App. 264, 274 (2012)).

Although we review the Board's conclusions of law under a *de novo* standard of review, "a degree of deference should often be accorded the position of the administrative agency." *Brandywine Senior Living at Potomac LLC*, *supra*, 237 Md. App. at 211 (quoting

8

*Assateague Coastkeeper v. Md. Dep't of Env't*, 200 Md. App. 665, 690 (2011)).  Indeed, we "must presume that a decision made by an administrative body is *prima facie* correct." *Fire and Police Emp. Ret. Sys. v. Middleton,* 192 Md. App. 354, 359 (2010) (citing *Marsheck v. Bd. of Trs. for the Fire & Police Emp. Ret. Sys.*, 358 Md. 393, 402 (2000)).

Notably, "the deference owed to an agency's interpretation of the law will vary depending on a number of factors."  *Comptroller v. FC-Gen Operations Inv. LLC*, 482 Md. 343, 363 (2022).  Such factors include the consistency of the agency's application of law over time and the process by which the agency "formulat[ed] its interpretation of the statute."  *Id.* at 362–63 (quoting *Balt. Gas & Elec. Co. v. Public Serv. Comm'n*, 305 Md. 145, 161–62 (1986)).  *See also Brown v. Handgun Permit Rev. Bd.*, 188 Md. App. 455, 467 (2009) (noting that "we give weight to an agency's interpretation of a statute it is charged with enforcing where the interpretation is longstanding and falls within the agency's area of expertise").  On appeal, an appellant bears the burden of establishing that the agency erred as a matter of law.  *Brandywine Senior Living at Potomac LLC*, *supra*, 237 Md. App. at 211 (citing *Assateague Coastkeeper*, *supra*, 200 Md. App. at 690).

## DISCUSSION

The Board of Appeals was required to address two issues in its consideration of Appellants' variance request, and we likewise grapple with the same two issues on appeal. We primarily must determine whether the installation of a therapeutic pool on Appellants' property qualifies as a reasonable accommodation under federal law.  This, however, is not the end of our inquiry.  All variance requests for properties within the Anne Arundel County Chesapeake Bay Critical Area must also meet the requirements set forth in Section

9

3-1-207 of the County Code. The Board addressed each of these requirements in its decision. This Court must review the record and determine whether there exists substantial evidence to support the Board's conclusion that Appellants failed to meet their burden to establish each of those requirements.

We conclude that the Board properly applied state and federal law in analyzing whether Appellants' variance request constitutes a reasonable accommodation. There is ample evidence in the record to support the Board's conclusions that the requested variance is not a reasonable accommodation and that Appellants failed to meet their burden under Section 3-1-207 of the County Code. As such, the Board's decision was not arbitrary and capricious and is supported by substantial evidence. We, therefore, affirm the decision of the Board and the Circuit Court for Anne Arundel County.

## I. The Board did not err in concluding that appellants' variance request does not qualify as a reasonable accommodation under the ADA and FHA.

The first issue for our consideration on appeal is whether the Board erred in concluding that Appellants' variance request does not constitute a reasonable accommodation. Our review of this issue is two-fold. Appellants first assert that the Board failed to properly apply relevant federal law regarding reasonable accommodation requests. We, therefore, first review the legal framework applied by the Board. We then consider whether the record includes substantial evidence to support the Board's conclusion that Appellants' request does not qualify as a reasonable accommodation.

**A.** **The Board applied the correct legal standard to determine whether Appellants' variance request qualified as a reasonable accommodation under the ADA and FHA.**

On appeal, Appellants primarily argue that the Board did not properly apply federal law to consider Appellants' request for a variance as a reasonable accommodation under the ADA and FHA. We recognize -- and the County concedes on appeal -- that the ADA "requires preferences in the form of 'reasonable accommodations' that are needed for those with disabilities to obtain the *same* . . . opportunities that those without disabilities automatically enjoy." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002) (emphasis in original).[5] The FHA also protects individuals with disabilities from unlawful housing discrimination, which includes any "refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises[.]" 42 U.S.C. § 3604(f)(3)(A). Unlawful discrimination under the FHA also includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

The Natural Resources Article of the Maryland Code also recognizes the need for reasonable accommodations. Maryland's Chesapeake Bay Critical Area Program includes:

> Provisions for reasonable accommodations in policies or procedures when the accommodations are necessary to avoid discrimination on the basis of physical disability, including

---

[5] The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A).

11

> provisions that authorize a local jurisdiction to require removal of a structure that was installed or built to accommodate a physical disability and require restoration when the accommodation permitted by this paragraph is no longer necessary.

Md. Code (1974, 2023 Repl. Vol) § 8-1808(c)(1)(iii)(11) of the Natural Resource Article ("NR"). Furthermore, the County Code provides that "[a]ny request for reasonable accommodations" within the Critical Area "as a result of a physical disability shall meet the standards for disability defined in the [ADA]." County Code § 17-8-106.[6]

Under federal law, a request for an accommodation must be granted where the applicant shows the accommodation to be reasonable and necessary to afford individuals with disabilities "equal opportunity to use and enjoy housing[.]" *Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 603 (4th Cir. 1997). Citing the Seventh Circuit's decision in *Dadian v. Village of Wilmette*, Appellants assert that a requested accommodation is "necessary" where the "desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." 269 F.3d 831, 838 (7th Cir. 2001) (quoting *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)). On appeal, the County does not challenge the fact that the use of a therapeutic swimming pool would be beneficial to Appellants' sons and impact their overall quality of life by effectively

---

[6] Appellants contend on appeal that federal protections under the ADA and FHA supersede any conflicting state and local laws. While this is correct, Maryland's Critical Area Program and the Anne Arundel County Code do not conflict with the ADA because they include provisions expressly providing for the grant of reasonable accommodations for disabled individuals as defined under the ADA. *See* NR § 8-1808(c)(1)(iii)(11); County Code § 17-8-106. The Board did not err in applying these laws in their consideration of Appellants' variance request.

12

treating the symptoms of PD. In our view, the fundamental disagreement between the parties in this case is whether the requested accommodation is *reasonable.*

The parties agree that the determination of whether a requested accommodation is "reasonable" is a highly fact-specific inquiry that must be decided on a case-by-case basis. *Id.* According to Appellants, once an applicant has made a *prima facie* showing that the requested accommodation is both necessary and reasonable, the burden shifts to the opposing party to demonstrate that it is not reasonable. Appellants contend that the Board failed to adequately apply this legal framework. Additionally, Appellants assert that the Board failed to consider the six elements laid out in HUD and DOJ's 2016 joint policy statement, upon which Appellants' expert in disability law relied at the Board hearing.

Appellants' proposed legal framework, the 2016 joint policy statement, and the Board's analysis all have one critical element in common: they require that an applicant seeking an accommodation establish that the accommodation is necessary to allow the disabled party to have an *equal opportunity* to reasonably enjoy the property. This captures the requirement under the FHA that accommodations be granted when "necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Appellants contend that if their sons are denied use of the proposed therapeutic lap pool, they will be unable to properly treat their disabilities. Appellants maintain that this will impact their sons' overall quality of life, which will then impact their sons' ability to enjoy any reasonable use of the property. In fact, Appellants argue that their sons "are not able to use and enjoy their property, *or any property*, when they are unable to receive the necessary treatment."

13

This strikes us as an overbroad interpretation of what constitutes a reasonable use of property and, in turn, an overbroad interpretation of what constitutes a reasonable accommodation. As the Board noted, this interpretation would "demand an injudicious approval of *any* proposed accommodation as inherently reasonable." Adopting the standard suggested by Appellants would create a slippery slope whereby administrative agencies must grant any proposed accommodation if it would in any way improve the applicant's overall quality of life. In determining what constitutes a reasonable accommodation, the Board appropriately analyzed whether the requested variance was required to allow Appellants' sons to enjoy the same "opportunities that those without disabilities automatically enjoy." *U.S. Airways*, *supra*, 535 U.S. at 397. In other words, the Board properly considered whether the requested accommodation was necessary to allow Appellants' sons to use and enjoy the property to an equal extent as non-disabled individuals.

The Supreme Court of Maryland's decision in *Mastandrea v. North* is instructive. 361 Md. 107 (2000), *superseded by statute on other grounds*, NR §§ 8-1808(c)(13), (d), *as recognized in Assateague Coastal Trust, Inc. v. Schwalbach*, 448 Md. 112, 130–33 (2016). In *Mastandrea*, the Supreme Court reviewed the denial of a requested variance from Talbot County's zoning laws restricting development within certain portions of the Critical Area. *Mastandrea*, *supra*, 361 Md. at 112. The applicants were parents to a disabled, wheelchair-bound daughter who, due to her disability, did not have the ability to access and enjoy the property's waterfront area. *Id.* at 112–13. The applicants sought a variance in order to insert pathways on their property to facilitate movement by wheelchair throughout the lot.

14

*Id.* They argued that the requested variance qualified as a reasonable accommodation under Title II of the ADA. *Id.* at 118.

One of the issues presented on appeal in *Mastandrea* was whether Title II of the ADA applied to the administration and enforcement of local zoning ordinances. *Id.* at 112. Although the Supreme Court of Maryland declined to address this issue in *Mastandrea*, the General Assembly subsequently codified Section 8-1808(c) of the Natural Resources Article of the Maryland Code, clarifying that local zoning laws must allow for reasonable accommodations where "accommodations are necessary to avoid discrimination on the basis of physical disability[.]" *Id.* at 125–30; NR § 8-1808(c)(1)(iii)(11). Accordingly, it is clear -- and the County does not contest on appeal -- that the ADA and the FHA apply to local zoning enforcement.

Critically, the Supreme Court of Maryland's decision in *Mastandrea* includes instructive language regarding what constitutes a reasonable accommodation. The Court characterizes a reasonable accommodation as a "reasonable modification to the relevant zoning ordinance" that allows a disabled individual to enjoy the property "*equally with a non-disabled person*." *Mastandrea*, *supra*, 361 Md. at 132 (emphasis added). The Court identified the family's enjoyment of the property's waterfront area as a "reasonable and significant use of the lot[.]" *Id.* Furthermore, the Court recognized that the applicant's daughter was unable to enjoy their property to an equal extent as non-disabled individuals because her wheelchair prevented her from accessing and enjoying the property's waterfront area. *Id.* For these reasons, the pathways were necessary to reasonably accommodate the needs of the applicant's disabled daughter. *Id.*

15

The Board relied on this portion of the Court's holding in *Mastandrea* in determining whether Appellants' variance request qualifies as a reasonable accommodation. In doing so, the Board considered whether Appellants' sons, in the absence of the requested variance, would be able to enjoy the property to an equal extent as non-disabled individuals or if they would be denied a "reasonable and significant use" of the family's property solely based on their disabilities. *Id.* As further discussed below, the Board's conclusion that the requested variance does not meet the requirements of a reasonable accommodation is supported by substantial evidence in the record.

We do not disagree with Appellants' assertion that, where applicants make a *prima facie* showing that a requested accommodation is both reasonable and necessary, the party opposing the request must put forth evidence to establish that the request is unreasonable. *See Bd. of Dir. of Cameron Grove Condo., II v. State Comm'n on Hum. Rel.*, 431 Md. 61, 79–80 (2013). The Board's decision appropriately confronts the threshold issue of whether Appellants' requested accommodation is reasonable and necessary. Because the Board concluded that Appellants failed to establish that the requested accommodation is reasonable, the Board never reached the burden-shifting analysis proposed by Appellants. We perceive no error in the legal framework applied by the Board and conclude that its decision as to the reasonable accommodation issue was not arbitrary and capricious.

B. **Appellants failed to present substantial evidence to establish that the requested accommodation is reasonable and necessary.**

Our review of the record reveals very little evidence to support Appellants' assertion that the requested therapeutic lap pool qualifies as a reasonable accommodation under

16

federal law. Appellants certainly provided the Board with evidence demonstrating that their sons would benefit from the pool and its therapeutic uses. Nevertheless, we are not persuaded by Appellants' argument that their sons are unable to use and enjoy *any* property if they are unable to receive adequate therapy. As discussed above, the Board properly considered whether Appellants' sons are currently deprived of any reasonable use of the property solely based on their disability. Appellants failed to present any evidence to establish that their sons are unable to use and enjoy the property to an equal extent as non-disabled individuals.

In our view, Appellants' reasonable accommodation request is easily distinguishable from the request in *Mastandrea*. In *Mastandrea*, the Court concluded that the requested variance was necessary to ensure that the applicants' daughter could enjoy the property's waterfront area. Other non-disabled individuals were easily able to access and revel in the property's waterfront area and its accompanying views. The family's daughter, however, was denied such an opportunity solely by virtue of her disability. Unlike the applicants' daughter in *Mastandrea*, Appellants' sons currently already have access to and enjoy expansive use of the property and the abundant amenities thereupon. Such amenities include the property's waterfront area and the deck and patios, which were constructed pursuant to an earlier grant of a variance request. The sons are also able to use ropes, swings, and trapezes in and around the property.[7]

---

[7] The Board emphasized the existence of these structures to establish that the family had "multiple avenues available" for therapeutic outlets for their children. This analysis was unnecessary for two reasons. First, we are not persuaded the existence of other options

An individual's inability to equally enjoy their property is a crucial element in determining whether a request for an accommodation is reasonable. Based on the evidence presented before the Board, we are unable to identify any manner in which Appellants' sons are unable to use Appellants' property to the same extent as other non-disabled individuals. We do not doubt that the use of a therapeutic lap pool would benefit Appellants' children and serve as an effective form of therapy to treat the symptoms of their disabilities. This alone, however, does not necessitate the grant of a request for an accommodation absent a showing that the requested accommodation is reasonable. We agree with the Board that Appellants failed to meet their burden as to this decisive requirement. We, therefore, affirm the Board's decision that the requested pool does not constitute a reasonable accommodation under federal law.

## II. Appellants failed to meet their burden to establish the variance requirements under Section 3-1-207 of the County Code.

Section 3-1-207 of the County Code sets forth the criteria that must be established for the Board to grant a variance request impacting the Critical Area. Subsection (b) provides that a variance may only be granted upon an affirmative written finding of the following:

> (1) because of certain unique physical conditions, such as exceptional topographical conditions peculiar to and

---

for therapeutic relief should guide an administrative agency's consideration of a request for a reasonable accommodation. Second, and more importantly, such an analysis was unnecessary here. The Board only needed to determine whether the requested variance would allow the Appellants' sons to enjoy the property equally to non-disabled individuals. Any evidence regarding other therapeutic outlets was irrelevant in light of the fact that Appellants presented no evidence that their children are deprived of equal use and enjoyment of the property.

18

inherent in the particular lot, or irregularity, narrowness, or shallowness of lot size and shape, *strict implementation of the County's critical area program would result in an unwarranted hardship*, as that term is defined in the Natural Resources Article, § 8-1808, of the State Code, to the applicant;

(2)

   (i)   a literal interpretation of COMAR, Title 27, Criteria for Local Critical Area Program Development, or the County critical area program and related ordinances *will deprive the applicant of rights commonly enjoyed by other properties in similar areas*, as permitted in accordance with the provisions of the critical area program, within the critical area; or

   (ii)   the County's bog protection program will deprive the applicant of rights commonly enjoyed by other properties in similar areas within the bog protection area of the County.

(3) the granting of a variance *will not confer on an applicant any special privilege* that would be denied by:

   (i)   COMAR, Title 27, or the County critical area program to other lands or structures within the County critical area; or

   (ii)   the County's bog protection program to other lands or structures within a bog protection area;

(4)  that the variance request

   (i)   is not based on conditions or circumstances that are the result of actions by the applicant, including the commencement of development activity before an application for a variance was filed; and

   (ii)   does not arise from any condition relating to land or building use on any neighboring property;

(5) that the granting of the variance:

   (i)   will not adversely affect water quality or adversely impact fish, wildlife, or plant habitat within the County's critical area or a bog protection area; and

19

(ii) will be in harmony with the general spirit and intent of the County critical area program or bog protection program;

(6) the applicant for a variance to allow development in the 100-foot upland buffer has maximized the distance between the bog and each structure, taking into account natural features and the replacement of utilities, and has met the requirements of § 17-9-208 of this Code; and

(7) the applicant, by competent and substantial evidence, has overcome the presumption contained in the Natural Resources Article, § 8-1808, of the State Code.[8]

County Code § 3-1-207(b) (emphasis added).

The County Code further provides that a variance may *not* be granted unless the Board finds that the variance is the minimum variance necessary to afford relief and that granting the variance will not (1) alter the essential character of the neighborhood in which the lot is located, (2) substantially impair the appropriate use or development of adjacent property, (3) reduce forest cover in the Critical Area, (4) be contrary to clearing and replanting practices required in the Critical Area, and (5) be detrimental to the public welfare. County Code 3-1-207(e).

---

[8] The referenced section of the Maryland Code's Natural Resources Article provides:

> In considering an application for a variance, a local jurisdiction shall presume that the specific development activity in the critical area that is subject to the application and for which a variance is required does not conform with the general purpose and intent of this subtitle, regulations adopted under this subtitle, and the requirements of the local jurisdiction's program.

NR § 8-1808(d)(3)(ii).

20

The Board correctly recognized that failure to meet even one of these requirements mandates the denial of the variance request. Consequently, applicants bear a heavy burden to establish that their request for a variance should be granted. The Board properly addressed each of the requirements under Sections 3-1-207(b) and 3-1-207(e) of the County Code and concluded that Appellants failed to meet their burden.[9] Critically, the Board concluded that Appellants failed to establish that the requested variance is necessary to avoid an unwarranted hardship or deprivation of a commonly enjoyed right or that the requested variance would not confer a special privilege. These conclusions are supported by substantial evidence in the record. Accordingly, we conclude that the Board did not err in rejecting Appellants' variance request.

## A.     Unwarranted Hardship (County Code § Section 3-1-207(b)(1))

The Board properly recognized that Appellants bore the burden to establish as a threshold matter that "strict implementation of the County's critical area program would result in an unwarranted hardship, as that term is defined in the Natural Resources Article" of the Maryland Code. County Code § 3-1-207(b)(1). Section 8-1808 of the Natural Resources Article provides that an "unwarranted hardship" exists if "without a variance, an applicant would be denied *reasonable and significant use of the entire parcel or lot* for which the variance is requested." NR § 8-1808(d)(1) (emphasis added). *See also*

---

[9] The Board concluded that Appellants met their burden to establish the requirements set forth in County Code § 3-1-207(b)(4), as well as County Code §§ 3-1-207(e)(2)(i) through (iv). Furthermore, the Board concluded that the requirement under County Code § 3-1-207(b)(6) is not applicable in this matter. Accordingly, these requirements are not at issue on appeal and are not addressed here.

21

*Assateague Coastal Trust*, *supra*, 448 Md. at 139 (recognizing that an "applicant has the burden of demonstrating that, without a variance, the applicant would be denied a use of the property that is both significant and reasonable"). In our view, this inquiry is very similar to and overlaps with our earlier consideration of whether the requested variance qualifies as an accommodation allowing the applicants to enjoy reasonable use of their property. Indeed, the Board's reasonable accommodation analysis and unwarranted hardship analysis are remarkably similar – so, too, are our analyses on these two issues.

*Mastandrea* is once again instructive. The Supreme Court of Maryland considered whether denying the applicants' variance request and prohibiting the development of pathways on the applicants' property would result in unwarranted hardship to the applicants' disabled daughter. *Mastandrea*, *supra*, 361 Md. at 134–36. The Supreme Court explained:

> [T]he Board was required to (and did) consider whether the property owners, in light of their daughter's disability, would be denied a reasonable and significant use of the waterfront of their property without the access that the path provided. There is substantial evidence in the record establishing that, without the path, a person in a wheelchair could not enjoy the waterfront portion of the property.

*Id.* at 136. The Court concluded that denial of the variance would deprive the appellants' disabled, wheelchair-bound daughter of a reasonable and significant use of the property in the form of "access[ing] reasonably the rear yard, view[ing] wildlife along the river's edge, or participat[ing] in shoreline-oriented activities." *Id.* at 137. Accordingly, the denial of the variance request would result in unwarranted hardship to the applicants' daughter.

Appellants' variance request is distinguishable from the variance requested in

22

*Mastandrea*. While the applicants in *Mastandrea* provided sufficient evidence to establish that their daughter would be denied a reasonable and significant use of the applicants' property absent a variance, there is sufficient evidence in the record here to demonstrate that Appellants' sons already enjoy expansive use of the Appellants' property and its amenities. Appellants' own testimony recognized that their children have access to the waterfront and engage in various recreational and therapeutic activities on the property. The record is devoid of any evidence to suggest that Appellants' sons would be denied any reasonable or significant use of the property in the absence of a therapeutic lap pool. We, therefore, conclude that Appellants failed to show that denial of their requested variance would result in an unwarranted hardship to their children.[10]

### B. Deprivation of a Commonly Enjoyed Right and Conferral of a Special Privilege (County Code §§ Section 3-1-207(b)(2)(i), (b)(3)(i))

The Anne Arundel County Code also requires applicants requesting a variance in the Critical Area to establish that a "literal interpretation" of the County's zoning laws "will deprive them of rights commonly enjoyed by other properties in similar areas." County Code § 3-1-207(b)(2)(i). Furthermore, applicants must show that granting the requested variance "will not confer a special privilege that would be denied by: (i) COMAR, Title

---

[10] Appellants sought to install a therapeutic lap pool for the purpose of providing their sons with an effective form of treatment to manage the symptoms of their disabilities. We disagree with the Board's characterization of the requested pool as a "luxury." If this term was included to emphasize the fact that developing a pool on property within the Critical Area is not a commonly enjoyed right, we understand the underlying sentiment. Using the term "luxury" to make this point, however, is inappropriate in this context. Such a term suggests an amenity requested for the purpose of leisure and recreation. No such "luxury" was requested here.

23

27, or the County critical area program to other structures within the County critical area . . . ." County Code § 3-1-207(b)(3)(i). We conclude that Appellants failed to meet their burden as to these two requirements.

A zoning analyst and planner with OPZ testified at the Board hearing that other properties in Appellants' neighborhood and within the buffer area have in-ground pools. Notably, the analyst testified that these properties installed their pools prior to the enactment of the Critical Area program and, therefore, did not need to seek a variance for installation. Since the enactment of the program, property owners in the Critical Area are unable to construct pools within a buffer area without being granted a variance. Appellants failed to provide any evidence that other properties in the area have requested and been granted a variance to install an in-ground pool within a buffer or expanded buffer area.

Based on the evidence presented at the Board hearing, the Board did not err in concluding that ownership of a swimming pool is not a right commonly enjoyed by other properties in similar areas. County Code § 3-1-207(b)(2)(i). This evidence likewise supports the Board's conclusion that granting Appellants' variance request would confer a special privilege. We conclude that the Board relied on strong, substantial evidence in reaching these conclusions.

## C. Adverse Impacts, Presumption of Nonconformity, Minimum Variance Required, and Detriment to Public Welfare (County Code §§ 3-1-207(b)(5), (b)(7), (e)(1), and (e)(2)(v))

The Board also concluded that Appellants failed to meet their burden to establish that the requested variance would not "adversely affect water quality or adversely impact fish, wildlife, or plant habitat within the County's critical area" as required under Section

24

3-1-207(b)(5) of the County Code. Both the County and Appellants presented relevant evidence addressing this issue. The County's witness from OPZ testified that construction of a pool on Appellants' property would adversely impact water quality, as well as fish, wildlife, and plant habitats in the Critical Area. When asked to elaborate on this point, the County's witness clarified that constructing *anything* within an expanded buffer area would have an adverse impact on the surrounding environment "simply by virtue of construction."

By contrast, Appellants' expert civil engineer testified as follows:

> As indicated, the proposed lap pool's length is 55 feet long. In my professional opinion, a new pool located on the subject property as designed will not have adverse environmental impacts to the site and surrounding areas, as no vegetation will be removed, no slopes will be disturbed, mitigation will be provided in the form of new trees and shrubs, and the pool area drains directly down to an existing stormwater management facility and we've added sone [sic] pre-treatment.

Appellants' expert landscape architect also testified that the pool's disturbance to the Critical Area would be "minimal."

Both parties provided pertinent yet conflicting evidence regarding the proposed pool's impact on the Critical Area. As emphasized by the Board, an applicant seeking a variance must meet *all* of the requirements set forth in Section 3-1-207(b) of the County Code. We are satisfied that the Board appropriately concluded, based on substantial evidence, that Appellants failed to establish the requirements of Sections 3-1-207(b)(1), (2), and (3) addressed above. As such, even if this Court were to assume *arguendo* that Appellants presented substantial evidence to establish that the pool would not adversely affect the surrounding environment, we still conclude that the Board did not err in rejecting

25

Appellants' variance request. Likewise, this Court need not consider whether Appellants met their burden under Section 3-1-207(b)(7) or Section 3-1-207(e) of the County Code.

We, like the Board, are empathetic to the Appellants' plight and commend their efforts to provide the best possible care to their children with disabilities. We recognize that Appellants' ability to provide their children with effective therapeutic outlets early in their lives is the greatest way to set their sons up for success in the future. Nevertheless, we are unable to conclude that Appellants provided substantial evidence to establish that the pool is a reasonable accommodation that meets the variance requirements set forth in Section 3-1-207 of the County Code. We conclude that the Board's application of law was not erroneous, arbitrary, or capricious and its conclusions are supported by substantial evidence in the record. The Board, therefore, properly denied Appellants' variance request. For these reasons, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

26